## LITTLE et ux. *v.* DOWNING.

Trespass by husband and wife, for an injury to the land of the wife, is properly prosecuted in her name alone after her husband's death.

Ancient records, when accompanied by an admission that they come from the proper depository, are admissible in evidence without further proof of their authenticity.

When a record has become illegible by lapse of time, the testimony of a witness, who had examined and copied it while legible, is properly received to supply the defect.

Where books of record are evidence, their contents are evidence of those matters therein recited which were proper subjects of record.

A copy of an ancient proprietary charter, duly recorded and certified in the book of records of the proprietary, is admissible in evidence.

Taxation of land to an individual and his heirs for a long series of years, and the payment of those taxes by him and them, are competent evidence tending to show that individual's assent and approval of the assignment of the land to him in severalty, and his claim to the ownership thereof.

Entry upon a lot of land, claiming title, and a survey thereof made, for the purpose of ascertaining its location, quality and boundaries, are competent and sufficient evidence of possession.

The selection for an individual of a lot of land, in an original proprietor's right, made and recorded upon the records of a proprietary, in accordance with a vote of the proprietary, vests in such individual a title to the lot thus selected, as against the proprietary and all persons claiming under them.

Mere entry and occupation by a stranger do not divest title, so as to oust the true owner of seizin.

Possession taken under color of title is in law possession of all the land described in the deed conferring such color of title, lying in the same tract; but, in order to make such possession effectual to the party claiming title under it, it must be open, visible, exclusive and notorious — calculated to give notice to the owner of an adverse claim thereby to the land.

The statute of limitations does not run against persons insane, or females under coverture.

Where, in trespass *quare clausum*, with a continuando, the plaintiff failed to prove an entry within the period specified in the writ, he is at liberty to waive the time alleged in the declaration, and, having proved any single act of trespass at any time before action brought, may recover damages therefor.

TRESPASS, *quare clausum fregit.* John Little was alleged to be an insane person, and prosecuted the action by guardian. He had deceased pending the action, which was prosecuted since by the wife.

The declaration alleged that the defendant, at Rumney, on November 1, 1854, and on divers, &c., broke and entered the close of Sarah Little, in Rumney, being lot No.

5, in the first range of .100 acre lots on Ellsworth line, lying east of lot No. 4, in said range, occupied by Gibson, and cut down and carried away timber, wood and bark, &c., particularly specified in the writ, which is dated January 29, 1855.

The defendant pleaded the general issue, with a brief statement of soil and freehold.

The defendant objected that John Little, being dead, the action could not proceed in the name of Sarah Little, but the court overruled the objection, subject to exception.

To prove the plaintiff's title, a deed of partition was proved, purporting to be made by and between the heirs of Josiah Little, deceased, in which there was assigned to Sarah Little, as one of the heirs, among other lands, " all rights and interests in and to any lands lying in Rumney of which Josiah Little died seized and possessed."

It was proved by a witness that Sarah Little was a daughter of Josiah Little, and that the other parties to this deed were heirs, and, with her, the only heirs of Josiah Little. The deed was dated March 16, 1832, and it appeared that Josiah Little died in December, 1830. Said John Little was then and ever since insane, and Sarah was his wife.

To prove the title of Josiah Little to the premises in controversy, lot No. 5, on Ellsworth line, an ancient book of records was produced, purporting to be the proprietary records of Rumney. It was admitted they came from the office of the town-clerk of Rumney, and were in his possession as a part of the public records of the town.

It was objected that they were inadmissible without farther evidence that they were the records of the proprietors of that town, but the court overruled the objection, subject to exception.

Upon the 15th page from one end of the book was the following entry:

" May 25, 1782. Then laid out a 100 acre lot in the

township of Rumney, on the north-easterly side of Baker's river, and in the first tier. Said lot is numbered on each boundary, No. 5, beginning at the south-east corner of the 4th lot in said tier, at a beech tree; thence south, 59 east, 103 rods, to a beech tree; thence south, 30 west, 160 rods, to a beech tree; thence north, 30 east, 103 rods, to a beech tree; thence to the first bound laid out by us.

ALEXANDER CRAIG, ⎫  *Proprietors'*
ISAAC CLIFFORD,  ⎬  *Committee.*
JONAS BLODGETT,  ⎭

Surveyed by me, HOBART SPENCER.

A true copy from original survey, March 11, 1784.

Josiah Little pitched the lot No. 5, in the first range, on the right of Samuel Emmons, and is numbered on each corner No. 5.

Rumney, October 24, 1783. Received for the record.

EDWARD EVERETT,
In behalf of Josiah Little.

A true copy from the original pitch, recorded March 11, 1784.    EDWARD EVERETT, *Proprietors' Clerk.*

The writing of these entries was very obscure, the ink having much faded.

William A. Burns was offered as a witness, to show what the writing was, as he had formerly read it. Objection was made, but he was admitted, subject to exception.

He testified that his attention was called to this record three years ago. The writing was much more distinct then than it now is. He has frequently examined it since, and he could read it plainly a year ago, when he made a copy of it, which he did immediately after the court last November. The date was March 11, 1784.

At the 22d page, at the other end of the book, is recorded a warrant, dated May 29, 1782, for a proprietors' meeting June 14, among other things —

" To see if the proprietors will accept of a survey made

of a new division of 100 acre lots, according to the plan made and laid before them by Hobart Spencer, Surveyor.

" And to see what method the proprietors will take to establish each proprietor in the right of his share in the third division.

" To see if orders shall be given to the committee to complete the laying out of the remainder of the land included in the ranges of the aforesaid division, and not lotted on the west side of the town.

(Signed) EDWARD EVERETT, *Proprietors' Clerk.*"

This is followed by the record of a proprietors' meeting, held June 14, 1782, &c., at which it was —

" *Voted,* That the committee be enabled to complete the laying out of the third division on the north side of Baker's river, by laying out as much of the land as they think best into 100 acre lots.

" Adjourned to 8 next morning.

" Met 15 June, &c.

" *Voted,* That each proprietor shall have liberty to make his pitch of a 100 acre lot, each lot to each right he is the owner of, under the following restrictions and limitations:

" 1. Each proprietor, in making his pitch, shall take his lot as laid out by the committee appointed for that purpose, according to the plan laid before us.

" 2. Each proprietor who does not make his pitch until the committee have completed the lotting of common land according to the proprietors' book, shall have liberty to pitch in any of said lots that shall be laid out, provided he does not interfere with any vote respecting said division.

" 3. Each proprietor that inclines to pitch, shall enter the lot he pitches in writing, mentioning the number of the lot and the range it is in, and return it to the proprietors' clerk, who shall enter said pitch on file, with the name of the original proprietor whose right said lot is pitched on, which shall be accounted a legal pitch.

" 4. That the survey be made in writing, and committed

to the clerk, who shall enter each single survey on record, as soon as the lot mentioned in said survey is pitched and returned as above mentioned, and likewise the pitch, with the original proprietor's name."

To this evidence the defendant excepted.

The plaintiff then offered to prove that the lot in question was taxed to Josiah Little and to his heirs, and to the plaintiff, and that the taxes were paid by them, as evidence of assent by Little to the pitch made in his behalf, and of the claim to the land under it. The evidence was objected to, and admitted subject to exception.

The record of taxes showed the land taxed to Josiah Little, with the exception of four years, in which it was taxed to James Little, from 1797 to his death, and afterwards to his heirs, or to the plaintiff, till 1854, and the witnesses proved the payment of taxes by or on account of Josiah Little, from 1822 to 1828, and in 1830, and by the heirs or the plaintiff in 1831 to 1836, and from 1845 to 1852.

J. Atkinson testified that, as agent of the plaintiff, he went on the land in the fall of 1853, and passed across this lot. His object was to ascertain where the land was, and what it was.

The witness, Burns, testified that in December, 1854, he made a survey of this lot No. 5, at the request of Mr. Atkinson, and found one of the original corners standing.

Various witnesses testified as to seeing bark, wood and timber cut on the lot, and to admissions of the defendant that he cut it, but none of the evidence tended to show any trespass within the dates specified in the writ, and no objection was made to any of the evidence on this point.

When the plaintiff had closed his case, the counsel for the defendant moved for a nonsuit, but the court declined to order it, and the counsel for the defendant excepted.

The defendant then offered in evidence a deed from one Israel Willey to the defendant, dated and acknowledged

Little *v.* Downing.

May 27, 1828, and recorded October 14, 1839, the execution of which was admitted. Willey, in consideration of five dollars paid for one hundred acres of land, in Rumney, fifth lot and first division, and in the first range, remised, &c.

The deed was very informal, but was deemed by the court sufficient to convey any right Willey had to the lot.

Witnesses were then introduced, whose testimony tended to prove that Willey was in Rumney in 1828, but has long since removed; that in the spring of that year he sapped on this lot. There was no evidence of any other act of Willey indicating any possession or claim to this lot. After his purchase, the defendant first sapped on this lot the year after his deed.

In two or three years after the making of this deed, the defendant began to make a clearing on this lot. He felled the wood on two or three acres, planted corn upon the burn, and the next year sowed wheat; on the third season he mowed it, and has used it as pasture after he ceased to mow it.

In one or two years after the first clearing, the defendant cleared another piece of similar extent, and adjoining the other, on which he raised, first, corn, after that wheat and rye, then hay, and it was afterwards pastured.

About seven years after the first clearing, he cleared a third piece, adjoining the second, the whole cleared being estimated by the witnesses to amount to ten acres. A few years since the defendant cleared another piece of similar size, at another part of the lot. It appeared that the pieces cleared were fenced, but it did not appear that the fences extended on all sides of those pieces. For sixteen or eighteen years past the defendant has cut his fire-wood there and timber.

It appeared that the three first clearings made by Downing were made on the side line of the lot, where it joins the town line and the cleared land of Downing, in the

town of Ellsworth; that some wood was left between Downing's clearing, beyond the line and his clearing on this lot; that the clearing was about the length of the lot, and estimated by some of the witnesses at eight or ten rods, and by others at twenty or thirty wide.

It being objected that the plaintiff had shown no charter or grant constituting a proprietary, the copy of the charter recorded in the proprietors' book was admitted in evidence, subject to exception.

Various entries on the proprietors' book were exhibited, showing that they were substantially in the form of the record and pitch of this lot.

The defendant's counsel contended that, to show title in Josiah Little, a deed from Emmons to him must be shown, and that without it a pitch by Little on his right would vest no title in Little; and that to give Sarah Little any title it must be shown that Josiah Little was seized of this lot at his decease; and that an entry on land, claiming under a deed, whether valid or not, gives possession of all the land described in the deed, and that twenty years uninterrupted possession under such deed gives a valid title to the land, even against the owner, and he requested the court to charge the jury accordingly. He also contended that the meeting of the proprietors, June 14, 1782, was after the pitch of lot No. 5; and also that there was no evidence that Samuel Emmons was an original proprietor. These questions as matters of fact were submitted to the jury.

The court instructed the jury that, as matter of law, a pitch made in conformity to the vote of the proprietors, by a grantee of any original proprietor, on his right, would vest the title in such grantee; that a deed from such original proprietor was not indispensable; that the entry on the books of the proprietary of the pitch by Little on the right of Emmons, would be evidence, as against the proprietary, of such a conveyance, and if good against them

it would be good against any one claiming after them; that the entry on their books of a pitch by one person as agent of another, would be evidence of such agency as against them, and consequently as against others; and that the payment of taxes, assessed against Little on this lot, was evidence of his assent to the act of the agent in making the pitch, and of his claim under it; that they might, therefore, take it as a matter of law that this pitch vested the title of lot No. 5 in Josiah Little, and that the title vested in Josiah Little would not be divested by the mere entry and occupation of Downing, so as to prevent his being seized at his death.

The court farther instructed the jury, that possession of land taken under color of title, that is, under a deed purporting to convey it, would in law be a possession of all the land described in it, lying in one tract; but that in order to make such possession effectual to make a title to the party entering under such deed, after twenty years, it must be open, visible and notorious; such a possession as would be calculated to give notice to the owner of a claim to the land. If, then, the cutting at the beginning was slight, and along one of the lines, such as might be accounted for as a mere mistake of a line not well known, such possession should not be accounted as part of the twenty years, until it assumed such a visible and notorious character as might be fairly regarded as notice to the owner of an adverse claim.

The court farther instructed the jury, that as it appeared that at the time of the death of Josiah Little, John Little was insane, and so continued till his death, pending this suit, and Sarah Little was, during the same time, a married woman, no title would be gained by possession, as against them, by the lapse of twenty years, since the law gave them a right of action for five years after such disability was removed. If, therefore, the jury should be of opinion that the first clearing made by Downing did

not occur until after the death of Josiah Little, Downing would have acquired no title by possession, as against this plaintiff. To these instructions the defendant excepted.

The court farther instructed the jury, that as the plaintiff had not proved any trespass within the dates mentioned in his writ, they might find in his favor such damages as they should find to have been occasioned by any one act of trespass, proved to have been committed at another time.

The jury having found a verdict for the plaintiff, the defendant moves that the same may be set aside and a new trial granted, by reason of said exceptions.

*Smith, Quincy* and *Bellows,* for the plaintiff.

*Herbert,* for the defendant.

FOWLER, J. The action was rightfully permitted to proceed in the name of the wife, Sarah Little, after the death of her husband. This would manifestly have been so at common law, the suit having been brought for an injury to land of the wife, and she being therefore the party in interest. But, under the express provisions of our statutes, there can be no possible question on this point. *Knox* v. *Knox,* 12 N. H. 360; Revised Statutes, chap. 186, secs. 14, 15; Laws of 1844, chap. 139; Comp. Laws 481.

The ancient book of records, purporting to be the proprietary records of Rumney, accompanied as it was by an admission that it came from the custody of the town-clerk of Rumney, the proper depositary, by statute, of the public records of that character belonging to the town, was properly admitted in evidence, without proof that it contained the records of the original proprietors of the town. Official records, or books kept by persons in public office, in which they are required to write down the proceedings

---

Little v. Downing.

---

of some public body or corporation, are generally admissible in evidence, although their authenticity be not confirmed by an oath, or the power of cross-examining the persons on whose authority their truth and correctness depend. Where the books themselves are produced, and it is proved or admitted that they come from the proper depositary, they are received as evidence without further attestation. This is peculiarly the case with ancient records, as to which the jury may well presume many things which it would be indispensable to prove in relation to more recent documentary evidence. 1 Greenl. Ev., secs. 483, 484, 485, 498, 507; Comp. Laws 363, sec. 17; *Woods* v. *Banks*, 14 N. H. 109; *Adams* v. *Stanyan*, 24 N. H. (4 Foster) 405; *Ferguson* v. *Clifford*, *ante*, 86.

There was no valid objection to the testimony of William A. Burns, to show what were the words of the ancient record, before the writing had become obscure by the fading of the ink. The record, being illegible, was lost for all practical purposes, and the next best evidence—the testimony of a witness who examined and copied it while legible—was properly received to supply the deficiency.

The record of the warrant for the proprietary meeting, June 14, 1782, and of the proceedings at that meeting and its adjournment, was competent. After such lapse of time the jury might presume that due notice was given and the meeting regularly holden. The contents of books of record, when the books themselves are produced from the proper depositary, must be evidence of the facts therein recited, which were proper subjects of record. So, too, the copy of the proprietary charter, duly recorded and certified in the ancient book of records of the proprietary, was properly admitted. *Woods* v. *Banks*, 14 N. H. 101; *Forsaith* v. *Clark*, 21 N. H. (1 Foster) 409; *Adams* v. *Stanyan*, 24 N. H. (4 Foster) 405, and authorities cited on page 416. See, also, *Sumner* v. *Sebec*, 3 Greenl. 223, where it was holden that a book, found in the hands of the town-

clerk, purporting to be a record of births and marriages, was *primâ facie* evidence of the facts contained in it, although it had no title, certificate, or other attestation of its character.

We have been unable to discover any sufficient objection to the reception of the evidence, that the premises in controversy had, for a long series of years, been taxed to Josiah Little and his heirs, and that they had paid the taxes, as tending to show that said Little approved and assented to the pitch or selection of this lot for him, as made and recorded on the records of the proprietary, and claimed to own it by virtue of that pitch or selection; and none has been suggested by the defendant's counsel. It is quite incredible that Little and his heirs should consent, for so long a period, to be taxed and to pay taxes for a tract of land in which he never claimed any interest or estate.

There can be no doubt that the entry upon the premises in controversy, by Atkinson, and the survey by Burns, for the purpose of ascertaining their location, quality and boundaries, were sufficient evidence of possession by the plaintiffs, and the testimony was properly received. *Cobleigh* v. *Young*, 15 N. H. 493.

It was unnecessary for the plaintiffs to prove the existence of a deed or grant from Emmons to Josiah Little, in order to show the title of the premises in controversy to have been in the latter. The pitch for Little by Edward Everett, on Emmons' right, having been made and recorded upon their own records, in strict accordance with the vote of the proprietary, was equivalent to a grant or deed from the proprietary, and vested in Little title to and seizin of the lot pitched, as against the proprietary and all persons claiming under them. The records show a recognition by the proprietary of Little's right to this tract of land in severalty, which estops them and their privies from denying his ownership of it. *Coburn* v. *Ellingwood*,

4 N. H. 99, 103 ; *Williams* v. *Inglis*, 21 Pick. 288 ; S. C., 2 Metcalf 83 ; *Davis* v. *Mason*, 4 Pick. 158 ; *Cobleigh* v. *Young*, 15 N. H. 493 ; *Atkinson* v. *Bemis*, 11 N. H. 44 ; *Enfield* v. *Permit*, 8 N. H. 512 ; *Enfield* v. *Day*, 11 N. H. 520.

The entry and partial occupation by Willey, for the purpose of sapping, in the spring of 1828, were clearly no actual disseizen of Josiah Little. They seem to have been only a temporary trespass, so that, as Willey is not shown to have had even color of title, it is very doubtful whether his quitclaim deed gave any color of title to the defendant. *Towle* v. *Ayer*, 8 N. H. 57, and authorities ; *Woods* v. *Banks*, 14 N. H. 101. Willey was a mere stranger, and entered for a temporary purpose, hardly to be regarded as in any way inconsistent with the rights of the real owner. If he can be considered ever to have had any legal possession of any portion of the lot, it cannot be pretended that it was such as to oust Josiah Little of his seizin of the entire lot, under his grant from the proprietary.

As a general rule, if one enters upon land under color of title, he is presumed to enter claiming according to the extent of his title, and to have constructive possession of all which his title covers, lying in the same tract ; but evidence of adverse possession is always to be construed strictly ; and, in order to make such possession effectual to restrain a title, it must be shown to have been open, visible, exclusive and notorious ; calculated to give notice to the owner, of an adverse claim, by the possessor, to the land in his possession. *Hoag* v. *Wallace*, 28 N. H. (8 Foster) 547 ; *Gage* v. *Gage*, 30 N. H. (10 Foster) 520 ; *Tappan* v. *Tappan*, 31 N. H. (11 Foster) 41 ; *Campbell* v. *Campbell*, 13 N. H. 485 ; *Smith* v. *Hosmer*, 7 N. H. 436 ; *Hale* v. *Glidden*, 10 N. H. 397 ; *Woods* v. *Banks*, 14 N. H. 101.

If, then, the deed of Willey gave the defendant color of title to the land in controversy, the instructions as to the necessary characteristics of the possession under it, in

order to render it effectual to give the defendant title, were entirely correct.

The effect of coverture and insanity upon the operation of the statute of limitations was fully discussed and considered in the recent case of *Pierce* v. *Dustin*, 24 N. H. (4 Foster) 417. It was there held that the statute did not run so long as either disability continued, and that it made no difference that the suit in which it was pleaded had been brought by the husband and wife. The instructions in the present case are fully warranted by the decisions and remarks of the court in that.

The motion for a nonsuit was properly denied. Although the plaintiffs failed to prove an entry within the period specified in their writ, they were at liberty to waive the time alleged in the declaration, prove any single trespass at any time before action brought, and recover damages therefor. Coke Littleton 283, b ; Buller's Nisi Prius 86 ; *Webb* v. *Turner*, 2 Strange 1095 ; *Hume* v. *Oldacre*, 1 Starkie 351 ; 2 Saund. Pl. & Ev. 855 ; *Fontleroy* v. *Aylmer*, 1 Ld. Raymond 239 ; 2 Greenl. Ev. 512, sec. 624 ; *Brown* v. *Manter*, 22 N. H. (2 Foster) 468 ; *Chandler* v. *Walker*, 21 N. H. (1 Foster) 282.

As there has been no specification or suggestion by the counsel for the defendant, pointing out error in any of the numerous rulings, or in the various instructions of the court below, to which exception was taken on the trial, it can hardly be necessary to examine and consider those rulings and instructions more at length in detail. They seem to us to have all been in substantial conformity with repeated decisions of the highest judicial tribunals of this and other jurisdictions. There must, therefore, be

*Judgment for the plaintiffs upon the verdict.*