# ROCKINGHAM,

## JUNE TERM, A. D. 1860.

---

## DENNETT *v.* DENNETT.

A devise as follows: "I give and devise to my son, Mark Dennett, all the residue of my estate, to descend to the youngest son of his body begotten, and from him to the oldest male heir of said youngest son of his body, lawfully begotten; and in failure of such issue, then to the heirs of said Mark Dennett forever," must be construed to give to Mark Dennett an estate for life, and to his youngest son surviving him a contingent remainder for life.

If, by virtue of the rule in Shelly's Case, Mark Dennett, by the union of his estate for life, and of the remainder to his heirs in fee, becomes owner of the fee, yet the two limitations become united in him, only until the intervening limitations become vested, and must then open to admit such limitations as they arise.

A contingent remainder is not barred by a conveyance under the statute of uses, nor under our statute; though it may be by a fine or feoffment.

IN EQUITY, upon a bill brought by Joseph F. Dennett against William H. Dennett, to stay waste. It appeared by the bill, answer and evidence, that Jeremiah Dennett was seized of a farm of one hundred and eight acres, in Portsmouth, bounded, &c., and on the 7th of April, 1812, by his will, proved on the 17th of August, 1818, devised as follows: "I give and devise to my son, Mark Dennett, all the residue of my estate, to descend to the youngest son of his body, lawfully begotten, and from him to the oldest heir male of said youngest son of his body, lawfully begotten, and in failure of such issue, then to the heirs of said Mark Dennett forever."

Mark, immediately on the death of Jeremiah, entered into possession of this farm, which was covered by this devise, and continued in possession till his death, August 19, 1858.

On the 19th of November, 1852, Mark, by his deed of warranty of that date, conveyed the premises to his son, William H. Dennett, the defendant, reserving a life estate therein to himself. Under this deed William entered and is in possession.

The plaintiff, Joseph F. Dennett, is the youngest son of Mark, and was born February 7, 1821.

On the 12th of July, 1842, Mark Dennett, by his deed of warranty, duly executed and recorded, conveyed the premises to one Mark R. Wendell, in fee, and on the 14th of said July, Wendell, by his deed, re-conveyed the premises to said Mark Dennett. The case was fully and elaborately argued by

*Emery,* for the plaintiff.

*Hatch,* for the defendant.

BELL, C. J. It is objected that the deed of Mark Dennett to William H. Dennett is inoperative, because, by reason of the reservation of a life estate to the grantor, it is a grant of a freehold estate, to take effect *in futuro.* It is undeniable that, by any of the old common law conveyances, a freehold could not be granted to take effect at a future time. Co. Litt. 217, a; 5 Co. 94, b; 1 Cru. Dig. 62. But we think it quite as well settled that an estate of freehold *in futuro* may be created by a conveyance taking effect under the statute of uses; *Rogers* v. *Eagle Fire Co.,* 9 Wend. 625, 631; and that our ordinary conveyance will be construed a bargain and sale under the statute of uses, or a conveyance at common law, as will best carry into effect the design of the grantor. *Bell* v. *Scammon,* 15

Dennett *v.* Dennett.

N. H. 381. Such a deed, with a reservation of a life estate, will be construed as a covenant to stand seized to his own use, and then to the use of the grantee. *Shed* v. *Shed*, 3 N. H. 432.

In construing a devise the court is bound to give effect to every word of the will, without change or rejection, provided an effect can be given to it not inconsistent with the law, nor with the general intent of the whole will, taken together. If technical words are used, they will be understood in their technical sense, subject to the same exception. Such a construction is to be adopted as will make the devise effectual; and if it cannot be so to the full extent, then so far as it lawfully can. Wms. Ex'rs 925, &c., ch. 2; *Hall* v. *Chaffee*, 14 N. H. 215; *Hall* v. *Hall*, 27 N. H. 275.

Estates tail having been abolished in New-Hampshire, in 1789 (*Jewell* v. *Warner*, 35 N. H. 176), the construction of this will must be different from what it would be in those countries where such estates still exist.

. The same result must follow from the abolition, almost entire, of the rule in Shelly's Case, by which, "when the ancestor, by any gift or conveyance, takes an estate of freehold, and in the same gift or conveyance an estate is limited, either immediately or mediately, to his heirs in fee or in tail, the word *heirs* is one of limitation of the estate, and not of purchase, and the estate of inheritance vests immediately in the ancestor." 1 Co. 104; 3 Cru. Dig. 325. The Revised Statutes, ch. 156, sec. 5, now provide, that "no express devise of any estate for life, or other limited estate, shall be enlarged, or construed to pass any greater estate by reason of any devise to the heirs or issue of such person."

The terms of this will, "all the residue of my estate," if standing uncontrolled by other expressions, would pass a fee. *Parker* v. *Parker*, 5 Met. 134; *McKennon* v. *McRoberts*, 1 Wash. 96; *Elliott* v. *Carter*, 12 Pick. 436;

*Leavitt* v. *Wooster*, 14 N. H. 550; *Forsaith* v. *Clark*, 21 N. H. 409. They cannot be so construed here, because the devises following control the sense, and show that a life estate was intended to be given to him; and because such a construction, unqualified, would defeat the estate given to the youngest son.

The words, "in failure of such issue," would, where estates tail exist, give an estate tail to him by implication. 6 Cru. Dig. 260, and cases cited; *Hall* v. *Chaffee*, 14 N. H. 215. It is assumed, in the argument for the plaintiff, that the same language here, where estates tail do not exist, would give an estate in fee. It does not appear to us that this is a necessary consequence. It is not, however, a point of any importance in this case.

The words, *to descend*, in the expression "to descend to the youngest son of his body lawfully begotten, and from him to the oldest heir male of said youngest son of his body begotten," cannot have effect to regulate the course of descent, since that is controlled by the statutes; Rev. Stat., ch. 166; and cannot be changed by the private will of any testator. Whoever does not take under a devise, as an heir, or co-heir under the statute, must take, if at all, as a purchaser described by the term *heir*.

As used in this will, the word *descend* can neither have its correct technical meaning nor any correct vulgar or colloquial sense. It must be understood, however, to express the intention of the testator, that the estate, upon the death of Mark Dennett, should pass to his youngest son; the word importing that the estate should pass after his decease, as it would in the case of a descent.

The same word must be understood to be repeated in the next clause: "and from him" (to descend) "to the oldest heir male of said youngest son," &c., and the same remarks must apply to it in that connexion. Lands cannot descend, they cannot be made to descend, by any individual will to "the youngest son," nor to "the oldest

male heir," but must "descend in equal shares to the children of the deceased," &c. This clause, like the former, must be regarded as indicating the intention of the devisor, that after the decease of Mark's youngest son, the estate should descend to the oldest heir male of his body. These terms are not descriptive of such oldest heir male, as legal heir, since here the heirs constitute a class and not an individual, but must be understood as indicating a particular person by that description to take as purchaser. The devise in question, then, seems to us equivalent to this: "I give, &c., to my son Mark all the residue of my estate, to pass after his death to his youngest son, and, after the decease of the latter to his eldest son, and, on failure of such issue, to the heirs of Mark forever."

If we now look at the facts appearing in the case, we find that the will of Jeremiah Dennett took effect before August 17, 1818, when it was proved. At that time the plaintiff was not born. Upon his birth he became entitled to a contingent remainder for his life, to take effect upon his father's decease, in case he still remained youngest son. That estate must be at most an estate for his life only, because the property was to pass to his oldest heir male as a purchaser, and not as heir; and on failure of such a son, or of that devise taking effect from any cause, not to go to his heirs, who might be daughters, but to the heirs of Mark, his father.

Upon the death of Mark, when his estate ceased, the contingencies upon which the complainant's interest depended had happened, and the estate consequently vested in him for his life. It was not affected by the conveyance in fee, made by his father to the defendant, his brother, which was merely inoperative, unless as to the reversion, as the deed in terms reserved to the grantor all the interest he had in the property during his life, unless it should be held that the reservation is void, as being inconsistent with the grant. Touch. 79.

Dennett v. Dennett.

It is not necessary, in this case, to look further at the construction of the will, as it does or may affect the claims under the subsequent clause of the will. It cannot now be foreseen whether there will be at the decease of Joseph F. Dennett any oldest heir male, capable, by that description, of taking the estate. If there should not be, the estate may probably belong to the heirs of Mark Dennett. If there should be, it may well be doubted if the devise to such heir male can take effect as a remainder, because of the number of contingencies to which it is exposed, being dependent, at its creation, upon the possibility that Mark Dennett might not have a youngest son to take at his death, and that such son may not have a son; or if he has, that the son may survive him; a possibility upon a possibility, which the law does not admit in the case of a contingent remainder. Co. Litt. 25, b; 184, a; Fearne's Cont. Rem. 176; *Cholmley's Case*, 2 Co. 51; *Lampet's Case*, 10 Co. 50, b.

Again, it may be doubted if this devise to the oldest male heir of the youngest son of Mark could take effect as an executory devise, because, as Mark Dennett had no youngest son at the death of the testator, and might have such son twenty-five years or more after the testator's death, and the devise to the oldest male heir of that son could not take effect until that son's death, a period of more than one life and twenty-one and three fourths years might elapse before that occurrence might happen. And the principle is settled, that an executory devise must vest within the compass of one or more lives in being, and twenty-one years and nine months after. 6 Cru. Dig. 409; 4 Kent Com. 267. It is not necessary to discuss these questions further, since no question upon this part of the will arises here, or, if the parties are wise, ever will arise.

By a statute passed June 30, 1837 (Comp. Stat. 287; 2 Laws 316), any person seized of lands, &c., in fee tail, and

having power to convey by fine or recovery, may convey by deed, which shall be effectual to pass the lands and to bar all remainders and reversions, and tenant for life with a vested remainder in tail in another, may, with the remainderman, convey by deed, as if the remainder was a fee simple.

The deed of Mark Dennett to Mark R. Wendell was made without doubt in intended conformity to this statute, for the purpose of barring the estate tail supposed to be vested in Mark Dennett. If he had not such an estate tail, it was a mere idle ceremony, so far as its effect under this statute is concerned. If, then, we should assume that the law relative to estates tail remained in force here, we should have to consider whether, under the will of Jeremiah Dennett, Mark Dennett took an estate tail ; and our impression is that he did not, as is before stated. No one of the cases cited is like the case before us, nor is there any case to be found, as we believe, where an estate for life is limited to one person, and then to one of his sons, who cannot be his heir at common law, where it has been held that he thereby took an estate tail. The usual remainder limited in settlements before marriage to the first and other sons of the intended husband by the intended wife, is a contingent remainder. 2 Cru. Dig. 240. A remainderman always takes by purchase, not by descent. The remainder to the heirs of Mark Dennett would, at common law, give him a fee simple, and not a fee tail, and the deed to Wendell could derive no force from the last clause of this statute, because no remainderman joined in the conveyance, and the remainder limited was not vested, but contingent.

But it is also contended, that if Mark Dennett took but an estate for life, still the remainder to the youngest son was contingent, and was barred by the destruction of the tenancy for life before the contingency happened, by the deed of Mark to Wendell. We have stated that we

regard this as a contingent remainder, and by the destruction of the life estate, on which such a remainder depends, it is clear the remainder is destroyed. 4 Kent Com. 235, 248, 253. Such remainders will be destroyed by a feoffment or fine. But it is settled that conveyances which derive their operation from the statute of uses, as a bargain and sale, lease and release, and the like, do not bar contingent remainders, for none of them pass any greater estate than the grantor may lawfully convey. 4 Kent Com. 255. The deed in common use here is a deed of bargain and sale. The deed of Mark to Wendell purports to be nothing more. And though it is held that to prevent a deed from failing of any effect, it may be regarded as a feoffment, yet it will not have that effect given it, to affect the estate of a third person. By such a deed nothing more is conveyed by a tenant for life than he may rightfully convey ; that is, his own interest alone ; and any contingent remainder remains unaffected by it. *Archer's Case,* 1 Co. 66, cited by the defendant, in support of the position that a contingent remainder will be destroyed by the feoffment of the tenant for life, on whose estate the remainder depends, is equally decisive of the point that Mark Dennett did not take an estate tail, but the devise to his youngest son gives him a contingent remainder ; and *Bowles' Case,* 11 Rep. 79, is to the same point.

It is contended that the rule in *Shelly's Case* was part of the law of this State in 1818, when the will of Jeremiah Dennett took effect, and that it is consequently to govern always the construction of this will and the rights of the devisees under it. We are inclined to regard both these propositions as sound. But where the ancestor takes an estate of freehold, and there is in the same conveyance an unconditional limitation to his heirs, with the interposition of some intermediate estate, either vested or contingent, though the subsequent limitation vests immediately in the ancestor, and becomes a vested remainder,

yet the two limitations are united and executed in the ancestor only until such time as the intervening limitations become vested, and they then open and become separate in order to admit such limitations as they arise. 4 Kent Com. 210, 214; 2 Cruise Dig. 264; *Bowles' Case,* 11 Rep. 79; *Ballard* v. *Ballard,* 18 Pick. 44.

It is not, then, of any consequence in this case, that the rule in *Shelly's Case* may apply. The estate of Mark was a life estate in possession, and a fee-simple in remainder, liable to separate and let in the estate of the youngest son. The life estate has terminated. The estate of the plaintiff has taken effect, and he is entitled to the possession of this estate, and consequently to the relief he asks.

*Decree in favor of the plaintiff.*