## KENNISTON v. LEIGHTON.

A conveyance to the use of B, his heirs and assigns, during his natural life, then to the use of his children during their natural lives, and from and after the decease of either of the children of B, his portion to descend to his children, and from and after the decease of the grand children of said B, then to the use of their heirs and assigns forever, was held to convey a life estate only to the children of B.

In conveyances to uses by deed of bargain and sale, so much of the use as the bargainor does not dispose of, remains in him and descends to his heirs.

No one can take advantage of defective proceedings in the court of probate in relation to the sale of estates by license, but those whose interests are affected injuriously by the proceedings.

TRESPASS *quare clausum.*    John Welch, by deed dated March 22, 1827, "In consideration of the natural love and affection which I bear to my son, Barzilla Welch, have given, granted, bargained and sold to the said Barzilla, and by these presents do give, grant, bargain, sell, alien, enfeoff, convey and confirm to the said Barzilla" the premises described in the writ; "to have and to hold the said granted premises, with all the privileges and appurtenances to the same belonging, to him the said Barzilla, his heirs and assigns, to such uses and to and for such intents and purposes as are hereinafter mentioned, expressed and declared of and concerning the

same; that is to say, to the use and behoof of the said Barzilla for and during the term of his natural life, without impeachment of or for any manner of waste; and from and after the decease of the said Barzilla, then to the use and behoof of his widow, if any he leave, for and during the term of her widowhood; and from and after the decease or marriage of his widow, or if he die without leaving a widow, then to the use and behoof of the children of the said Barzilla, for and during the term of their natural lives; and from and after the decease of either of the children of the said Barzilla, such deceased child's portion of the premises to descend to the children of such deceased child; and in default of children of such deceased child, then such deceased child's portion to be equally divided among the brothers and sisters of such deceased child; and from and after the decease of the grandchildren of the said Barzilla, then to the use and behoof of their heirs and assigns for ever."

Barzilla Welch had one child, Sarah Jane Welch. The daughter survived, and her guardian, under a license from the judge of probate, sold said premises to the plaintiff. Subsequent to this sale, John Welch, the grantor of said Barzilla, died. Sarah Jane married, and died without issue born alive. The guardian, in his petition to the judge of probate for sale of real estate of his ward, petitioned to sell the same land that is described in the plaintiff's writ, and in the guardian's deed, and also in the license; "said tract having been conveyed by one John Welch to one Barzilla Welch and his heirs, to and for the use of said Barzilla during his natural life, without impeachment of waste; and at the decease of said Barzilla, then to his widow, if any he should have, for and during her widowhood; and from and after her decease or marriage, or if he should die leaving no widow, then to the use of his the said Barzilla's children, for and during their natural lives; and on the decease of any such child, his share to descend to such child's children, and in default of such children, to be equally divided between the brothers and sisters of such deceased child; and in failure of grandchildren of said Barzilla, then to the use of his heirs and assigns."

James Welch, Jane Welch, and Dorcas Leighton, named in the defendants' brief statement (in whose right the defendants justify), are brothers and sisters of said Barzilla Welch, all children of John Welch, the grantor in the deed John Welch to said Barzilla Welch, conveying the premises in question in this suit. Barzilla Welch survived his wife, who was mother of Sarah Jane Welch. James Welch, Jane Welch, and Dorcas Leighton, are the only heirs of said deceased persons.

*Wheeler & Hall*, and *Carter*, for the plaintiff.

*Sawyer*, and *Dearborn*, for the defendants.

BELL, C. J. Most of the limitations of the deed of John Welch to Barzilla Welch, were inoperative, the contingencies provided for never having arisen. Barzilla survived his wife, and the grant to

his widow for her life never took effect. The remainder to the children of Barzilla operated in favor of Sarah Jane, who was his only child. The provisions in favor of other children and of the grandchildren never took effect, as Sarah Jane had no children. These provisions may be disregarded, as if they were struck out of the deed. And the same is true as to the concluding provision, "to the use and behoof of their heirs and assigns for ever." The word "their" can not be understood to refer to Barzilla, but must be held to apply to his grandchildren before referred to. The *habendum* of the deed will then be in effect as follows : " to said Barzilla, his heirs and assigns, to such uses, &c., as are after mentioned, that is to say, to the use of said Barzilla during his natural life, without impeachment of waste, then to the use of the children of said Barzilla during their natural lives." As there were no grandchildren, there could be no heirs of grandchildren. Under the *habendum*, in the events that have happened, no body took any interest but Barzilla and his daughter Sarah Jane, who each took an estate for life. Upon the death of Sarah Jane, all the uses expressly limited by the deed ceased.

There seems to us no ground to contend that at common law Sarah Jane would take an estate tail, which would, under our law, be an estate in fee. Her children, if she had any, must have taken, if they could take at all, in equal shares, as devisees and purchasers, and not as heirs in tail, which is inconsistent with the nature of an estate tail in her; and by the concluding clause, "to the use and behoof of their heirs and assigns for ever," each of the grandchildren must take an estate; and this seems, also, conclusive, that there could be no coalescence of the estate limited to them with the life estate of the mother, to vest in her an estate tail.

The question then arises, whether the reversion, or residue of the property passed by the deed to Barzilla, the trustee, and his heirs, or whether it resulted to the heirs of the grantor, John Welch. If the former is held the correct view, then the reversion was, at the time of the sale by license of the court of probate, vested in Sarah Jane alone; but if the latter, then the plaintiffs, as heirs of John Welch, and co-heirs with Sarah Jane, were each entitled to one fourth of the reversionary interest.

The rule of law on this subject is laid down in 2 Story's Eq. Jur., sec. 1199. " This distinction is to be observed in cases where the consideration, though purely nominal, is stated in the deed. If no uses are declared, the grantee will take the whole, and there will be no resulting use for the grantor, because the payment even of a nominal consideration shows an intent that the grantee should have some use; and no other being specified, he shall have the whole use. But when a particular use is declared, then the residue of the use results to the grantor, for the presumption that the grantor meant to part with the whole use is thereby repelled." And section 1200; " The same principle applies, where the whole of the estate is conveyed, or devised, but for particular objects and purposes, or on particular trusts. In all such cases, if those objects, or purposes, or trusts, by accident or otherwise, fail and do not take effect, or

if they are all accomplished, and do not exhaust the whole property, there arises a resulting trust for the benefit of the grantor or devisor, and his heirs." The same principle is laid down in 1 Cruise Dig. 402, sec. 35. " The rule, that so much of the use as the owner of the land does not dispose of, remains in him, takes place in those conveyances to use which operate without transmutation of possession, as in covenants to stand seized, and bargains and sales, where the use arises out of the estate of the covenantor or bargainor; for in those cases so much of the use as the covenantor or bargainor does not dispose of, still remains in him, as his old estate, and is called a use by implication." In addition to the authorities cited in these treatises, reference may be made to many others. 2 Bla. 335; 23 Vin. Ab., Uses, Y, a, and A, b; 7 Bac. Ab., Uses and Trusts, I; Adams' Eq. 31, and authorities; *Vander Volgen* v. *Yates,* 5 Seld. 223; *Elmsley* v. *Young,* 2 M. & K. 226; *Graves* v. *Graves,* 36 N. H. 89; Walk. Am. Law 341; 2 Swift's Conn. Dig. 113.

The consequence of the use thus resulting by implication is, that at the time of the license, granted by the court of probate to sell the land as the property of Sarah Jane, she was seized of an estate for her own life, and she and James Welch, Jane Welch, and Dorcas Leighton, under whom the defendants justify, were jointly seized, as heirs at law of John Welch, of the reversion after her life estate, subject to the contingency of her children's estates, if she should have children.

If the interest of Sarah Jane was properly described in the petition for license, and in the other proceedings, the sale would be good to convey her life estate and her share of the reversion, and nothing more; and the plaintiff would be entitled in a real action to recover one quarter part of the land in question; but could not maintain this action upon the ordinary principle that joint tenants and tenants in common can not maintain trespass against their co-tenants for a mere breaking and entering of the close and taking of the whole profits, or for cutting trees proper to be cut, though they may for an ouster or actual exclusion of the co-tenant from the land. *Odiorne* v. *Lyford,* 9 N. H. 511; 1 Ch. Pl. 180.

By the statute relating to licenses for the sale of real estate of persons deceased (Rev. Stat., ch. 164), such license may extend to the reversion of the widow's dower, or to any interest in land whatever; but any other estate except a present fee, shall be particularly specified in the application, notice, and license; but this proviso is not applied in terms to licenses applied for by the guardians of minors and others. Rev. Stat., ch. 150, sec. 22, &c. But the principle seems a correct and proper one to be applied in all cases of license, the same reasons seeming to exist in the last case as in the former. It is not necessary in this case to decide any thing upon this point, but if that principle should be held to apply, there has been an insufficient compliance with the law in this respect. The petition describes the land as conveyed to Barzilla Welch by John Welch in the terms of the deed in every respect, except the concluding clause, which, instead of saying " to the use of their (the grandchildren's) heirs and assigns," says, " to the use of his (Bar-

zilla's) heirs and assigns." The effect of this change is in substance to represent that Sarah Jane, as heir of Barzilla, her father, was entitled to the reversion in fee of the whole estate; whereas, as we have said, she was entitled to the reversion of one fourth only, as a co-heir with the others mentioned, of John Welch, her grandfather. This error in the description of the ward's interest in the property, was most material, and any person liable to be prejudiced by the mis-description, must have a right to avail himself of it to defeat the sale, if he should choose. Thus the purchaser at the guardian's sale, upon discovery of so material a mis-description, would have the right to refuse to complete his purchase, and would have good ground to be relieved, even after the deeds were completed, if that should appear to be for his advantage. But we think the proceedings would not be void. They would be voidable only by those whose interests were prejudiced by the mis-description, but would be valid as to all others. Here the plaintiff was a sufferer, since he acquired a title to a much inferior interest to that described in his deed; and he might have avoided the sale, if he had thought fit to do so. But the interest of these defendants could in no event be prejudiced. The sale, however made, conveyed no interest of theirs, and impaired none of their rights. They have, therefore, no right to complain, and can not avoid the sale, so far as it conveyed the title of Sarah Jane Welch; as to them, to that extent the sale is valid and unimpeachable.

Unless, then, it should appear that the declaration alleges an ouster of the plaintiffs from the land, there must be

*Judgment for the defendant.*