## FOREST *v.* JACKSON.

{ Mar. 22, 1876.

56  357.
68  581
56  357
69  437
†69  529
56  357
71  355

*Deed—Construction—Notice—Adverse possession—Color of title—Trover —Statute of limitations.*

In the construction of deeds, the rule requires that the whole deed shall be construed together; that every part of it shall, if possible, be made to take effect, and every word to operate, and that it shall operate according to the intention of the parties, if by law it may.

An estate was conveyed to A during her natural life, with the right of occupation and improvement to C, her husband, during the life of A, and at her decease to the heirs of her body, to their heirs and assigns forever, in the proportion of three parts to B, her son, to each of her other children one; and, in the *habendum*, it was stipulated that A should "have and hold the aforegranted and bargained premises, with all the privileges and appurtenances, to the said A, during her natural life, and at her decease to her children, as above, their heirs and assigns, to their use and behoof forever." *Held*, that A took simply a life estate.

After the decease of A, her husband, C, being in possession of the premises, by deed conveyed the premises to the defendant, who went into possession under it. *Held*, that the deed constituted color of title, under which the defendant could, by twenty years' open, uninterrupted adverse possession, acquire title.

Possession under a deed, duly recorded, is constructive notice that he who is in possession is claiming adversely, it being the presumption that he is claiming under and according to his title.

Where parties are under a disability at the time the statute of limitations begins to run, suit must be brought within five years after the disability is removed, in order to prevent the statute from being a bar.

Where several plaintiffs bring a joint action of trover, and the title of some of them fails, the action cannot be maintained.

The defendant, on direct examination, testified that he paid the taxes on the premises the title to which was in dispute. On cross-examination, he was asked whether his valuation was increased after he bought the land. *Held*, that the question was immaterial; that, if material, the fact could only be proved by the record.

From Carroll Circuit Court.

Trover, for one undivided half of three lots of pine logs, taken from certain premises in Madison, in this county, and converted by the defendant to his exclusive use in 1869, 1871, and 1873. Plea, the general issue.

None of the plaintiffs have lived in Madison for the last twenty

years, except Mr. and Mrs. Forrest; also Albion P. Richardson, who is now 31 years of age, and has not resided in Madison since he was 14 or 15 years of age, except one or two years about 1870. Robert A. Richardson is 37 years of age. He left home when he was 14 years of age, and has not resided there since. He has been home at times on visits, a week or so at a time, at times once or twice a year, at other times once in two years. The female plaintiffs are married, as set forth in the writ. The plaintiffs introduced a deed from Isaac S. Davis to Phebe Richardson, dated December 14, 1844, recorded April 16, 1874, of one undivided half of the Philip Jackson pasture (so called), situate in what is now called Madison, formerly a part of Eaton, containing 26 acres (the material parts of that deed sufficiently appear in the opinion of the court); also, an office copy of deed Noah Davis to Isaac S. Davis, dated March 7, 1837, of one undivided half of the same premises; also, deed Isaac S. Davis, executor of the will of Moses Davis, deceased, to Asa Jackson (the defendant), dated Nov. 29, 1845, of one undivided half of the same premises.

The evidence tended to show that the logs were cut by the defendant upon the premises in dispute in 1869, 1871, and 1873, and converted by him to his exclusive use.

The plaintiffs, who sue in their own right, are the children of Phebe Richardson by her husband Philip Richardson, and were all living at the date of the deed to their mother, who died in June, 1845, in possession under said deed of one undivided half of said premises. The defendant introduced a deed from Philip Richardson, the husband of Phebe Richardson, to Asa Jackson, dated February 19, 1850, recorded September 13, 1853, of one undivided half of said premises. The defendant's testimony tended to show that the premises were adjoining his home farm; that previous to February 19, 1850, his cattle strayed from his own land upon the Jackson pasture, and fed upon it; that, after he bought the undivided half of the premises of Moses Davis, executor, he called upon Philip Richardson for a division; that they made a parol division of the premises; that he undertook to put up the fences on his half, trim up the trees, and improve the same; that he derived no benefit from his efforts, because Philip Richardson neglected to keep the fences on his half in repair; that Richardson asked him to buy his half, which he did, February 19, 1850,—and since that time has been in the exclusive possession of the premises, trimming up the trees, cutting out the underbrush, doing up the fences, paying the taxes upon the premises, and claiming to own the whole estate. No particular fence was built between Philip Richardson and the defendant.

One Burt, a witness for the defendant, testified as follows: " I know where the Jackson pasture comes to the road. I know Albion Richardson, one of the plaintiffs. [He asked me if I had bought a piece of land of his father (another piece included in the same deed to Phebe Richardson). He said he thought his father had no right to sell it to me. It was eight or ten years ago.] I asked his father to show me the deed. He did. I saw Albion again, and he asked me how it run.

I said it was my opinion it run after his mother's death to the two boys. He said he should claim it. He asked if the deed was recorded. I said I thought not." That part of his testimony included in brackets was admitted, subject to the plaintiffs' exception.

The plaintiffs ask the defendant, upon cross-examination, the following question : " Do you know whether your valuation was increased, for the purposes of taxation, after you bought this land ? " The testimony was excluded, and the plaintiffs excepted. The defendant had testified on his main examination that he paid the taxes upon the premises after the deed to him from said Philip. The defendant claimed to have acquired a title to the premises against the plaintiffs by adverse possession. The plaintiffs requested the court to instruct the jury " that the burden of proof is upon the defendant to show conclusively actual knowledge or notice in some way on the part of the plaintiffs ; that the defendant claimed the whole premises adversely to them, and that the statute of twenty years' limitations commences to run from the date of such knowledge or notice, and that such claim must be continuous ; "—" also, that each one of the several plaintiffs must have such knowledge or notice to be affected thereby."

The instructions asked for were not given, unless included in those which were given, which were as follows: Possession alone will not be sufficient proof of an ouster by one owner against the other owners, for, where both have an equal right to the possession, each will be presumed to hold under his lawful title till the contrary appears. An ouster in such case, therefore, must be proved by acts of an adverse character,—such as (1) claiming the whole estate himself, (2) denying the title of the plaintiffs, or (3) refusing to permit them to enter ; that a bare taking of the profits of the land would not of itself amount to an ouster, but that an undisturbed and quiet possession for a long time is a fact from which an ouster may be found by the jury ; that actual notice to the plaintiffs was not necessary ; that it would be sufficient if the defendant's acts were such as to give presumptive notice,— that is, if his acts were such that the plaintiffs ought to have known, under all the circumstances of the case, that he was in possession, claiming to hold exclusively ; that the owner may be charged with knowledge of what is done openly on his land, and of a character to attract his attention ; that the presumption of notice arises from occupation long continued ; and that notice of the claim may be presumed as far as the occupation indicates that a claim exists, and the deed or color of title serves to define specifically the boundaries of the claim or possession. To the refusal to instruct, and to the instructions given, the plaintiffs excepted.

It appeared in evidence that Philip Richardson died in May, 1874 ; that, from the date of the deed to his wife, in December, 1844, to the date of his own death, he lived upon one of the other tracts conveyed by said deed ; and that after the death of Phebe Richardson, his wife, he was married a second time. His second wife died in May, 1874, a short time after his death.

No timber was cut upon the premises in dispute till 1869, from which time the plaintiffs' counsel claimed the statute of limitations commenced to run, if at all, in this case.

The deed from Davis to Phebe Richardson, after death, remained in the hands of Philip Richardson without being recorded till April, 1872, when, upon the request of Robert A. Richardson, it was delivered to him by his father in the same condition in which it now is, and was recorded by said Robert in April, 1873. The only knowledge the plaintiffs had of the existence of such a deed prior to April, 1872, was derived from information to that effect. It did not appear that any of the plaintiffs except Robert and Albion ever saw the deed.

The trial was conducted by the parties upon the theory that Phebe Richardson took a life estate only under the deed to her, and that her husband, Philip, was not tenant by the courtesy after her death : whether she took anything more than an estate for life was not raised upon the trial. It was conceded on both sides that the deed was originally made to Phebe Richardson; and that subsequently an attempt was made to alter it by writing Philip over the name Phebe wherever it occurs in the deed. When or by whom the alteration was made did not appear. The original deed may be referred to in the argument.

Verdict for the defendant, which the plaintiffs move to set aside, and for a new trial for supposed error in the foregoing rulings, " and as being against law and the evidence." The case was tried before Smith, J., and the questions raised were transferred by him.

*J. H. Hobbs* and *Quarles,* for the plaintiffs.

*Pitman* and *F. Hobbs,* for the defendant.

\* Stanley, J., C. C. The plaintiffs' right to recover must depend upon the construction that is to be given to the deed from Isaac Davis to Phebe Richardson, dated December 14, 1844, recorded April 16, 1874, purporting to convey one undivided half of the premises from which the logs in dispute were taken. In this deed the grantor conveyed " to Phebe Richardson during her natural life, with the right of occupation and improvement to her husband, Philip Richardson, during the life of the said Phebe, and at her decease to the heirs of her body, to their heirs and assigns forever, in the proportion following,— to wit, to her son, Robert Andrews Richardson, three parts, to each of her other children one part, the following described real estate" (then describing it), and at the close of the description and before the *habendum* the following : "In case of the death of the said Robert Andrews Richardson before he arrives to the age of twenty-one without issue, then the oldest surviving son of the said Phebe Richardson shall have three shares to one share to each of the surviving children ; and in case the said Phebe shall leave no son at her decease, who

---

\* Smith, J., having presided at the circuit, did not sit.

shall live to the age of twenty-one years, then the real estate shall be equally divided among her surviving children, to their heirs and assigns forever."

The *habendum* was as follows: "To have and to hold the afore-granted and bargained premises, with all the privileges and appurte-nances thereof, to the said Phebe Richardson, during her natural life, and at her decease to her children, as above, their heirs and assigns, to their use and behoof forever."

The case finds that this deed was the title upon which the plaintiffs relied, and that the trial was conducted by the parties upon the theory that Phebe Richardson took a life estate only under the deed to her, and her husband, Philip, was tenant by the courtesy after her death. Whether she took anything more than an estate for life was not raised upon the trial.

The plaintiffs, in their argument, now claim that Phebe Richardson, under that deed, took a fee, and that consequently her husband, Philip, upon her death, was tenant by the courtesy during his life, and until his death in May, 1874. Assuming that this line of argument is now open to the plaintiffs, of which there is great doubt, it is important to determine what were the rights of Phebe Richardson under that deed. The well recognized rules laid down for the construction of deeds, justly said to be founded in law, reason, and common sense, require that the whole deed shall be considered and construed together, and not any particular portion of it by itself; that every part shall, if pos-sible, be made to take effect, and every word to operate; that it shall operate according to the intention of the parties, if by law it may; that, if it cannot operate in one form, it shall operate in that which by law will effectuate the intention. *Richardson* v. *Palmer*, 38 N. H. 212.

It is a settled principle, that, in the construction of deeds and wills, effect must be given to every word and clause, if practicable; and no implication can be made which would have the effect to annul any clause of a will which, without it, admits of a reasonable interpretation and effect. *Drew* v. *Drew*, 28 N. H. 494.

Applying these principles to this case, I think there can be no doubt that she took simply an estate for life. That seems to have been the manifest intention of the grantor; and, upon the authorities cited, and also upon the authority of *Dennett* v. *Dennett*, 40 N. H. 498, *S. C.*, 43 N. H. 499, and *Kenniston* v. *Leighton*, 43 N. H. 309, no other con-clusion can be reached.

If, then, she took an estate for life, upon her death the plaintiffs became entitled to the immediate possession of it; and, unless there is some paramount title, they are entitled to recover in this action. But the case further shows, that the defendant claimed title to one undi-vided half of the premises, by virtue of a deed from Isaac S. Davis, executor of the will of Moses Davis, to him, dated November 29, 1845, and to the other undivided half by virtue of a deed from Philip Rich-ardson to him, dated February 19, 1850, recorded September 13, 1853, and that since the date of his deed from Philip Richardson, February

19, 1850, " he has been in the exclusive possession of the premises, trimming up the trees, cutting out the underbrush, doing up the fences, paying all the taxes upon the premises, and claiming to own the whole."

It also appears that Philip Richardson was in possession of the premises at the date of his deed to the defendant. That deed was color of title; and the defendant, having been in possession, as the jury under the instructions of the court have found, openly, adversely, uninterruptedly claiming the whole estate himself, denying the plaintiffs' title, refusing to permit them to enter for more than twenty years prior to the commencement of this suit, gives him a good title as against some of these plaintiffs. The instructions of the court on these points were in accordance with the authorities, and were sufficiently favorable to the plaintiffs. *Bailey* v. *Carlton,* 12 N. H. 9; *Wendell* v. *Moulton,* 26 N. H. 41; *Little* v. *Downing,* 37 N. H. 355; *Farrar* v. *Fessenden,* 39 N. H. 269; *Gage* v. *Gage,* 30 N. H. 420.

It is not necessary that an adverse possession, to be available within the statute of limitations, should commence or be continued under effectual deeds. If the entry be under color of title, the possession will be adverse, however groundless the supposed title prove to be. *Farrar* v. *Fessenden, supra.*

It was not necessary for the defendant to show actual knowledge by or notice to the plaintiffs that he claimed the premises adversely. Possession under his deed, which was duly recorded, was constructive notice to all the world, the presumption being that he was in, claiming under and according to his deed.

But it is said by the plaintiffs that, during a portion of the time after the date of the deed, they were under a disability, and consequently the statute does not run against them; and it appears that Robert A. Richardson is now 37 years of age, and Albion P. 31. The deed being only twenty-four years old at the time of the commencement of this suit, the plaintiffs' position would be well taken were it not for sec. 2, ch. 202, Gen. Stats. That provides that the action must be brought within five years after the disability is removed. More than five years have elapsed since the disability as to them was removed, and consequently they have no title to the premises in question, nor to the trees, which are the subject-matter of this suit. Whether or not the defendant has acquired the title to the premises as against the female plaintiffs it is not necessary to decide. The plaintiffs claim a joint ownership in the property converted: failing to show that, they must fail in this suit.

As to the admissibility of the testimony of Albion P. Richardson, there can be no question. He was one of the parties; and it was competent as tending to show that he at least knew that his father was claiming the right to sell the premises described in the deed from Davis to his mother. It was in the nature of an admission by him, and was competent to be considered by the jury as bearing on his claim; and if not competent, was immaterial, and of a character not to preju-

dice the other plaintiffs. As to the correctness of the ruling of the court excluding the question to the defendant on cross-examination, there can be no doubt. The question was, " Do you know whether your valuation was increased, for the purposes of taxation, after you bought this land ? " It was immaterial whether the defendant's valuation was increased or not. The fact that it was or was not increased would have no legitimate tendency to show whether or not he paid the taxes upon the premises in question, which was the important inquiry. The valuation of his other property might have been increased or decreased after this purchase. The only proper way to show whether the property was taxed to him or not was by the records.

CUSHING, C. J., concurred.

LADD, J. I do not quite see how the declarations of the plaintiff Albion Richardson, testified to by the witness Burt, bore upon any issue tried in the case ; but if they were immaterial, they were clearly harmless, and I do not think the verdict should be set aside for the reason that they were received. The question to the defendant, whether his valuation was increased after he bought the land, was properly excluded. The fact called for was immaterial and irrelevant ; besides, if admitted, it would amount to no more than the opinion of the selectmen, proved by hearsay.

The verdict settles the fact of title gained by the defendant by more than twenty years' adverse possession. The only question is, whether the instructions were correct. I think they were, to say the least, sufficiently favorable to the plaintiffs. I see no reason why the defendant's occupation and claim, under the deed of Philip Richardson, executed February 19, 1850, and recorded September 13, 1853, did not amount to an ouster of the plaintiffs. It is a general rule, as I understand it, that if one tenant in common claim possession of the whole under a warranty deed from a stranger, it is a sufficient ouster—*Siglar* v. *Van Riper*, 10 Wend. 414, and authorities cited ; but whether that should be held so as matter of law, under the circumstances of this case, need not be inquired, because the question of ouster was submitted to the jury under instructions which covered the whole ground, and were unobjectionable, so far as I can see.

*Judgment on the verdict.*