Grafton, ⎱
Dec., 1898. ⎰

## WHITNEY v. BICKFORD.

In the construction of a deed the whole instrument is to be construed together, and, if possible, effect given to every part of it.

Where a deed by a general clause conveyed " the following portions of said homestead farm," and contained special clauses describing certain portions, the last of which was in terms broad enough to include other land, the special clause is limited by the general one, so that nothing passes outside the homestead farm.

TRESPASS *quare clausum.*   Plea, soil and freehold.   Facts found by a referee.   The land in dispute is described as those parts of gore lots No. 5, range 3, west, and No. 5, range 3, east, lying westerly of the Wallace Hill road, so called, in Franconia.

The plaintiff claims title by prescription and under a deed from the New Hampshire Iron Factory Company, executed February 25, 1857.   The deed, after describing certain mill property and a portion of the homestead farm, so called, in Franconia, westerly of the main road, contains the following: " Also the following described portions of said homestead farm lying easterly of the main road, viz.: The lot situate on said road, between the estate of Elder Nathaniel K. George and land of half an acre or thereabout in extent, which the Iron Factory Company aforesaid conveyed to one Babcock, a tailor, in the year 1855.   Also all the land lying easterly of the estates of said Babcock, George, and others, and extending southerly to land set off to Sabin Howland, thence on the several courses of the land set off to said Howland, Amos Brooks, Lydia A. Colby, Woolson and Brothers, and thence on a similar course, as the same is staked out, to a point on the common land, so called, fifteen feet southerly of the southwesterly corner of the shed or warehouse belonging to the store of said Iron Factory Company, now occupied by Spooner and Edson.   Also all the land, with the barn and other buildings thereon, situate between the point last named and land appurtenant to the two dwelling houses set off to William O. Carlton, and including the land lying easterly of said barn and other buildings.   Also the tavern house, with the barn and other outbuildings appurtenant to said tavern house, with the land under and adjoining.   Also the lot of land, containing one acre and thirty-three rods, set off to William O. Carlton aforesaid.   Also all the land lying easterly of the six dwelling houses (situate southerly of said tavern house) and the land appurtenant thereto, and westerly of the lot last above described, being a portion of the lot of one hundred and

sixty-three rods set off to John Squire, the westerly line thereof commencing at the northwesterly corner of land set off to C. & F. J. Eastman & Co., and thence running northwesterly to a bend in the brook, on a straight line ranging with the fence, thence on the course of said brook to a large elm tree, thence southwesterly to the northwesterly corner of the Moore house, so called, thence by the northwesterly end of said house to the main road, but reserving to the owners and occupants of said house the right of way ten feet in width next northwesterly of said house, from the main road to the land in rear of said house. Also the two lots of land set off to Johnson Quimby and William E. Aldrich. Also all the land lying northeasterly of the several parcels set off to William O. Carlton, as aforesaid, of the land appurtenant to the tavern house, of lands set off to said Quimby and Aldrich, and of land set off to Calvin Aldrich not heretofore conveyed by said Iron Factory Company. Also the parcel of land lying southerly of the sawmill and northerly of the estate late of Colby aforesaid and of land of Blake. But reserving so much of the land contained within the two first above described courses as a part of the homestead farm, as is covered by the millpond, and all the privileges in said pond."

The various tracts mentioned in the deed are all parts of the homestead farm, which as originally located did not include the disputed territory. This adjoins the homestead farm on the north, and was owned by the company when the deed was given.

Soon after obtaining the deed, Whitney entered on and claimed to own the whole by virtue of the deed, and has ever since claimed to own it, and has exercised various acts of ownership over the tracts in controversy during the entire period, but his possession and occupancy have not been of such a character as to give him title by prescription.

The gores were not regarded or considered as parts of the homestead farm by the parties at the date of the deed. The *locus* lies northeasterly of the set-offs enumerated in the deed, and had not been previously conveyed by the grantor.

The referee reports that, so far as it is a question of fact outside the deed, he is unable to find affirmatively that it was the intention of the Iron Company to include the disputed tracts in the conveyance.

*Bingham, Mitchell & Batchellor* and *Drew, Jordan & Buckley,* for the plaintiff.

*George H. Bingham* and *Smith & Sloane,* for the defendant.

WALLACE, J.  The plaintiff claims title to the premises in question by prescription and by deed. The finding of the referee

that " his possession and occupancy have not been of such a character as to give him title by prescription" disposes of that claim.

Therefore the only question to be considered is whether the deed to the plaintiff includes the land in dispute. The deed, after describing a portion of the homestead farm on the westerly side of the main road, proceeds as follows: " Also the following portions of said homestead farm lying easterly of the main road, viz.," and then describes several tracts of land. The plaintiff claims title under one of these descriptions, which is as follows: " Also all the land lying northeasterly of the several parcels set off to William O. Carlton, as aforesaid, of the land appurtenant to the tavern house, of lands set off to said Quimby and Aldrich, and of land set off to Calvin Aldrich not heretofore conveyed by said Iron Factory Company." The terms of the general clause in the deed plainly express an intention to convey " certain por- tions of the homestead farm lying easterly of the main road," which are specially described in the clauses that follow. The language used in the descriptive part of the deed, taken in its common and obvious sense, shows that the general clause ap- plies to and limits each of the clauses following it, down to and including the one under which the plaintiff claims. There is nothing to indicate that this clause is an independent one uncon- trolled by the general one preceding it. It appears from the case that all the tracts of land described in the clauses following the general one and preceding the one under which the plaintiff claims title were parts of the homestead farm lying easterly of the main road. This shows that no independent clause had interposed to disconnect the general clause from the special one under which the plaintiff claims and free it from the limitation that the land conveyed must be a part of the homestead farm. The disputed premises lie northeasterly of the set-offs enumer- ated in the deed, and had not been previously conveyed by the grantor. In these respects they answer the requirements of the deed. But they are not a portion of the homestead farm. Ap- plying the general principle applicable to the construction of deeds, that the whole instrument must be construed together, and, if practicable, effect be given to every part of it (*Forest* v. *Jackson*, 56 N. H. 357), the plaintiff did not take the land in question under the deed, because it fails to meet the essential requirement that it must be a portion of the homestead farm. In this view, it is unnecessary to consider the other questions raised.

*Judgment for the defendant.*

All concurred.