## ODIORNE *vs.* LYFORD.

If one tenant in common of land upon which a mill is situated, erects a dam below, on the same stream, upon his several estate, and thereby flows the common property, to the injury of his co-tenant, the latter may maintain an action on the case against him.

It is the adverse use or appropriation of water, for a period of twenty years, that furnishes evidence of a right to its use, unless there are other circumstances which may tend to show a grant.

The erection of a mill and dam, with the use of water for a less period than twenty years, by the owner of land on one side of a river, does not show an

appropriation of all the water in the stream to the side of the river on which the mill is built ; nor does such use give the owner of the mill and of the land on that side a right, at a subsequent period, to flow the place where the dam stood, by means of another dam erected at some distance below, to the injury of the owner of the land on the opposite side of the river.

If one person erects a dam upon a river where the public have an easement for the passage of lumber, and which may obstruct such passage, another cannot justify the erection of a dam below, and thereby causing the water to flow over the dam first erected, on the ground that it is a nuisance.

CASE, alleging that the plaintiff, on the 1st of January, 1832, was seized of a certain mill, and mill privilege, situated in Meredith, and known by the name of the wears mill, and had a right to the use of the river, or outlet from lake Winnepissiogee, to run in its natural channel from said lake, for the use of the mill ; and that the defendant, contriving, &c., erected a dam on the river below the mill, and thereby caused the water to flow back upon the wheels of it, whereby the mill and mill privilege were rendered worthless and of no value.

Plea, the general issue.

The plaintiff introduced evidence of title, derived from one Elijah Skinner, to one undivided half of a certain tract of land, situated in Meredith, on the westerly side of the Winnepissiogee river, and bounded on the same ; together with one undivided half of the mill and mill privilege connected with said land ; being the mill and privilege mentioned in the declaration. The mill was built and this privilege first occupied in 1828. The plaintiff also introduced a deed to himself from James Gordon, who was formerly the owner of the other undivided half, dated Dec. 10, 1831, conveying his interest in the said saw-mill and water privilege, except such portion of the same as was deeded by said Gordon to one Nathan Batchelder, in August, 1830.

It appeared that the deed from Gordon to Batchelder, referred to in the foregoing exception, conveyed " One undi- ' vided half of so much of lot No. 4, in the 1st division in ' Meredith, as the new dam lately constructed at Batchelder's

'mills, so called, shall flow, together with one undivided half 'of two rods in width of the land lying on the westerly 'bank of the river, and adjoining the same, and extending 'from the lower end of the present saw-mill privilege on said 'lot, and carrying the width of two rods up the river, until 'it meets the present tan-yard; thence," &c., "reserving to 'myself all my right and ownership of the saw-mill standing 'on the said premises, to use and occupy when I may think 'proper, subject to the flowing of the dam, and to take it off 'when I please."

The two rods named in said deed extend the whole length of the land of the plaintiff, adjoining on and bounded by said river.

The defendant introduced evidence that the deed aforesaid to Batchelder, was taken for the joint benefit of himself and Batchelder, and that he paid one half of the purchase money. And he contended that by virtue of this deed he became a tenant in common with the plaintiff of the mill privilege on the Meredith side of the river, so far as there was any privilege there, and as such tenant in common he had the same right to improve the same in any manner he saw fit, as any other tenant in common—that the plaintiff could not recover against him in this suit for such occupation as was alleged against him—that his only remedy was by petition for partition, and that this was a full answer to the plaintiff's action.

The defendant also offered evidence of title in himself, derived from Elijah Skinner and others,to a certain tract of land, situated in Gilford, opposite to the land of the plaintiff, and bounded on said Winnepissiogee river, together with the mill privilege thereunto annexed.

It was in evidence that a mill was built upon the premises aforesaid, on the Gilford side, in 1803, or 1804, and a permanent wing dam extended up the river, from the mill out into the stream; and from this permanent dam there was a space of about sixty feet to the Meredith shore, where a log

was extended across, and some plank put down to stop the water. The temporary portion of the dam was carried away the next spring. While the mill was used the owners generally put a log across in the summer, and they could not use the mill in the summer without thus extending the dam across.

In 1819 the gearing and iron work of the mill were removed, and the mill was no longer used, and gradually went to decay ; but, except where the site of the mill was, the permanent part of the dam, as above described, still remains.

The defendant contended that the entire mill privilege, at this portion of the stream, had attached to said premises, and vested in the owner of the same, by virtue of twenty years exclusive possession and occupation of said privilege.

It was also in evidence that for thirty years or more, rafts of logs, and sometimes of boards, were run up and down upon the Meredith side of the river, as long as said mill remained. Since the mill has gone to decay, such boards have usually been taken up on the Gilford side of the stream, where the old mill formerly stood ; and about the time of the erection of the defendant's dam, mentioned in the declaration, a portion of the plaintiff's dam was removed by lumbermen to make way for logs and rafts. Soon after, it was flowed by the defendant's dam, and has remained unrepaired to the present time ; and the defendant contended that he had acquired title to the whole of said privilege by virtue of his possession as aforesaid, subject only to the public right of way, on the Meredith shore, for the passage of lumber ; and that the plaintiff's mill and dam, recently erected and claimed by him on the Meredith side, was an obstruction of the right of way, and a public nuisance, and that the plaintiff could not recover of the defendant any damage by reason of the flowing of such an obstruction.

The court instructed the jury, that where tenants in com-

mon purchased property erected and designed for a particular purpose, or where they made such erections themselves, one tenant could not, at his election, destroy the property of another in such investments; and that a mill having been erected upon this property, and constituting an essential part of the same when purchased, one tenant had no right to destroy the property of the other by flowing the mill and rendering it useless, and that this ground of defence must fail.

The court further instructed the jury, that the land on the opposite side of the river being the property of different owners, the owners on either side owned to the centre of the river, unless the privilege had become attached to the Gilford side of the river, by virtue of twenty years exclusive occupation of the same as a mill privilege, by the proprietors of the land on that side of the river; and the question of title by possession was submitted to the jury.

As to the right of way, on the part of the public, for logs, rafts, &c., the jury were instructed that such right, if sustained by the testimony, would entitle any one to use the river unobstructed for such purpose; but that private occupation, not inconsistent with, or not obstructing such use on the part of the public, would be protected; that the obstruction of such use, by the erection of the plaintiff's mill, would form no justification to the defendant for destroying the plaintiff's property in the mill, by flowing the same; that the defendant had no right to complain of, or interfere with the plaintiff's mill except for the purpose of exercising the public easement in the passage of rafts and lumber, and could not sustain his defence on the ground that the plaintiff's occupation was a mere usurpation or nuisance, which he could in this manner destroy.

The jury rendered a verdict for the plaintiff, and the defendant moved for a new trial.

*Lyford, Clarke*, and *Bell*, for the defendant. The defendant contends, 1. That one tenant in common cannot main-

Odiorne
vs.
Lyford.

tain an action of this nature against another. Batchelder is trustee for the defendant of one fourth part of the land on the Meredith side of the river. 12 *Pick. R.* 34, *May* vs. *Parker, per Shaw Ch. J.;* 4 *Kent's Com.* (2d ed.) 469, 470, *and cases there cited;* 1 *Taunt. R.* 241, *Fennings* vs. *Lord Grenville.*

The acts of the defendant do not amount either to waste or destruction of the common property. 4 *Co. R.* 86, *Luttrell's case;* 2 *Show. R.* 261; 6 *N. H. R.* 22, *Johnson* vs. *Rand;* 8 *D. & E.* 145, *Martin* vs. *Knowllys;* 4 *East R.* 110, *Heath* vs. *Hubbard;* see, also, *Bac. Abr., Tenants in Common and Joint Tenants; Ham. Parties* 222; 2 *Wm. Black.* 1077.

The plaintiff's dam being wrongfully extended across the river, the defendant had a right to throw back the water upon it. 12 *Mass. R.* 311, *Jewell* vs. *Gardner.*

2. The defendant had acquired a right to the whole water power, by possession. 2 *Caines' Cas.* 86, *Wetmore* vs. *White;* 17 *Mass. R.* 289, *Hatch* vs. *Dwight;* 3 *Kent's Com.* (2d ed.) 446; 6 *East's R.* 215, *Bealey* vs. *Shaw.* He acquired such a right, notwithstanding the mill was not for twenty years in actual operation. 3 *Caines' R.* 307, *Palmer* vs. *Mulligan; Hatch* vs. *Dwight, supra;* 2 *Show. R.* 261.

3. The defendant had license to flow, by virtue of Gordon's deed to Nathan Batchelder, in trust for the defendant, dated August 31, 1830. *Moulton* vs. *Hanson, Strafford, August T.*, 1831; see, also, cases before cited, shewing the right of one tenant in common over the common property; and 3 *Kent's Com.* 452.

The acceptance of a deed, by the plaintiff, in which the defendant's right to flow is recognized, estops him to deny that right.

4. The plaintiff's dam was a nuisance, and he can, therefore, maintain no action for any injury to it. 3 *Greenl. R.* 269, *Berry* vs. *Carle;* 3 *Bac. Abr.* 683, *Nuisance;* 1

*Burr. R.* 516, *Rex* vs. *Sarmon ;* 3 *Camp. R.* 222, *Rex* vs. *Cross ;* 1 *Har. Dig.* 822 ; 4 *Black. Com.* 5 ; 1 *Chit. Gen. Pract.* 648, 653 ; 10 *Mass. R.* 70, *Arundel* vs. *McCulloch ;* 1 *B. & P.* 340, *Crisp* vs. *Churchill ;* 1 *Esp. R.* 13, *Girarday* vs. *Richardson ;* 3 *Caines' R.* 147, *Belding* vs. *Pitkin ;* 4 *Johns. R.* 329.

The public can and must pass in the same line in which they have done heretofore, and have a right to enjoy the way in as ample a manner as they have done. An obstruction to any extent is a nuisance. 3 *Kent's Com.* 419, 432.

An individual need not plead that in abating a nuisance he did "as little hurt as could be." 2 *Salk.* 458, *Lodie* vs. *Arnold ;* 3 *Bac. Abr.* 687.

Damages are the gist of the action. 1 *Simons & Stuart* 190, *Wright* vs. *Howard.*

In *Blanchard* vs. *Barker,* 8 *Greenl. R.* 258, (which may be cited for the plaintiff, as to the 1st position,) the action was for a diversion of the water. The declaration set forth the tenancy in common, and the whole case is vague and indefinite, and rests upon no intelligent and satisfactory grounds. It is irreconcilable with the case of *May* vs. *Parker,* 12 *Pick. R.* 34.

*Christie,* and *Bartlett,* for the plaintiff, contended, 1. That the defendant was not tenant in common.

He alleges that the conveyance from Gordon to Batchelder was partly for his benefit, and introduces evidence that it was in fact purchased with his money. But this evidence was inadmissible, because it went to contradict the deed, Gordon to Batchelder, and also because it went to shew title in the defendant by parol.

Such interest is recognized for certain purposes. 3 *N. H. R.* 170, *Scoby* vs. *Blanchard.* Creditors may take it ; but can it be set up in this way ?

Odiorne is only bound to recognize Batchelder and other owners who appear of record.

2. If the evidence was admissible, it cannot avail. If one tenant in common destroy the common property, he is liable to his co-tenant. *Co. Litt.* 200, *a*, *b*; 2 *Sel. N. P.* 567, 1064; 3 *Wils. R.* 118, *Goodtitle* vs. *Tombs*; 4 *East's R.* 121, *note*; 2 *Stark. Ev.* 841, *n*, *a*; 1 *Chipman's R.* 241, *Vickery* vs. *Taft*; 13 *Johns. R.* 217, *Vandenburgh* vs. *Van Bergen*; 3 *N. H. R.* 9, *Chesley* vs. *Thompson*.

It may be said, if Lyford is not interested Batchelder is, but this cannot avail. If one tenant in common sue without the other, the defendant must plead abatement. If this is not done, the objection must go to the damages only; and it did go so here.

*Jewell* vs. *Gardner* differs from this case. There the dam went entirely across the stream. Here it is only a wing dam.

3. The privilege on the other side was not occupied long enough to acquire a right. If it had been, it does not appear that the occupants used more than half the water.

4. The finding of the jury shows that the plaintiff might make a beneficial use of the mill, without impeding the public.

If Lyford wanted to use the river as a public highway he might have removed any obstructions. But he has no right to flow the plaintiff's mill for his own profit. 10 *Mass.* 70, *Arundel* vs. *McCulloch*.

PARKER, C. J. The title derived from Skinner to the plaintiff conveyed one half of a tract of land on the westerly, or Meredith side of the river, with one half of the mill and privilege alleged to be injured by the dam below, built by the defendant. It does not appear from the case when the plaintiff took his deed, but the mill was first built in 1828.

Gordon was formerly owner of the other half, and his deed of Dec. 10, 1831, conveyed that half to the plaintiff, with the exception of what Gordon had previously conveyed by his deed to Batchelder, in August, 1830.

By the deed to Batchelder, Gordon conveyed one half of so much of the premises as the new dam, lately constructed at Batchelder's mills, should flow, with one half of two rods in width of the land along the westerly bank, &c., reserving his ownership of the saw-mill standing on the premises, to use subject to the flowing of the dam, and to take it off at his pleasure.

The dam mentioned in this conveyance is understood to be the same dam mentioned in the declaration, and the deed conveyed the title to an undivided half of the land, and gave the right, so far as Gordon could give it, to do what is the subject matter of the complaint in the present case. But Gordon being the owner of only one undivided half, could convey no interest or easement in the other half, and his deed in no way purports to convey any such interest, or to give any license affecting it. The operation of the deed was to constitute Batchelder a tenant in common with the plaintiff, of the strip of land two rods in width lying along the river, and also of that portion of the land which should be flowed, subject to the reservation by which Gordon had the right to use and appropriate his half of the mill. And as the defendant was a joint purchaser with Batchelder, and paid one half of the consideration, he may also be considered as a tenant in common by means of a resulting trust for his benefit, notwithstanding the deed was taken to Batchelder alone. 3 *N. H. R.* 170, *Scoby* vs. *Blanchard;* 4 *ditto* 397, *Pritchard* vs. *Brown;* 8 *ditto* 197, *Page* vs. *Page.*

The question which arises on these facts is, whether one tenant in common is authorized, by means of a dam erected upon other land, to flow the land owned in common, without the license of his co-tenant ; and if not, whether an action on the case can be maintained against him for the injury.

To a certain extent, the act of one tenant in common is regarded as the act of all the tenants, and he may have the entire actual possession of the common property without being a wrong doer. Thus trespass cannot be maintained in

favor of one tenant in common against another, for a mere breaking and entering of the close, and taking the whole profits. 5 *Burr.* 2604, *Fairclaim* vs. *Shackleton*; 5 *Mass. R.* 351, *Higbee* vs. *Rice*; 16 *Mass.* 4, *Keay* vs. *Goodwin.* So a tenant in common may cut down trees of a proper age and growth to be cut. 8 *D. & E.* 145, *Martyn* vs. *Knowllys.* And may convert a chattel to its general and profitable application; as a whale into oil, or wheat into flour. 1 *Taunt. R.* 241, *Fennings* vs. *Lord Grenville.*

But one tenant in common is not authorized to exclude another from the possession of land owned in common, or to destroy a chattel, or to sell the whole of it. If one tenant in common of land oust his co-tenant, the latter may maintain trespass. 3 *Wils.* 118; 7 *Cowen's R.* 229, *Erwin* vs. *Olmstead*; 1 *Greenl. R.* 89, *Brackett* vs. *Norcross.* If he destroy personal property owned in common, trover lies. *Co. Litt.* 200, *a.* So if he sell the entire property. 3 *Johns. R.* 175, *Wilson* vs. *Reed*; 9 *Wend.* 338, *Farr* vs. *Smith.*

It has been said "if one tenant in common take all the chattels personal, the other hath no remedy by action, but he may take them again;" (*Co. Litt.* 200, *a.*) and that one cannot bring trover against another for a thing still in his possession, for the possession of one is the possession of both, (2 *Saund. R.* 47, *f, note,*) and this is true of a mere taking and continuance of possession. But there may well be a question, whether an action will not lie if one tenant in common of a chattel, owned and held for use, appropriate it entirely to his own use, and refuse to permit the other to have any possession or use of it. 8 *D. & E.* 145. "There must be a destruction of the chattel, or something equivalent to it, or something which amounts as it were to an ouster, so that a tenant in common who commits it cannot account." 1 *Taunt.* 249. There must be some act unauthorized by the ownership in common, and in violation of the just rights of the other party. And when such an act is done, how is the party justified or excused by the fact that he was a tenant in common?

In *May* vs. *Parker,* 12 *Pick. R.* 34, the court held that where a person being sole owner of one mill, and tenant in common of another, uses in his several mill more water than appertains to it, to the injury of the mill owned in common, a bill in equity may be maintained. It is not decided in that case that an action at law would not lie, but only that the remedy at law, if one existed, would be inadequate for the redress of the wrong done.

A question has been made, whether the plaintiff, as tenant in common, can have a remedy at law, for the flowing of the common property. The general rule is that tenants in common must join in personal actions for a wrong done, by a stranger, to the common property. *Co. Litt.* 198, *a ;* 9 *N. H. R.* 75, *Wilson* vs. *Gamble.* But where the injury is separate, they may have several actions. 2 *Wm. Black.* 1077. And the rule that they must join, cannot apply where the injury is done by a co-tenant.

The cases before cited show that trespass and trover may be maintained by one co-tenant against another. In Martyn *vs.* Knowllys, before cited, Lord Kenyon said, "If one tenant in common misuse that which he has in common with another, he is answerable to the other in an action as for a misfeasance." In *Chesley* vs. *Thompson,* 3 *N. H. R.* 9, case was maintained against a tenant in common of a mill, for so negligently keeping his fire, while he had the sole use of the mill, that it was burnt and destroyed. And in *Blanchard* vs. *Baker,* 8 *Greenl.* 253, the court held that one tenant in common might maintain case against his co-tenant, for diverting the water from their common mill, for separate purposes of his own. The act of the defendant in flowing the common property in this case, if without right, is not a mere entry and possession, as a tenant in common, subjecting him to account for the profits, but it is an act which tortiously deprives the plaintiff of the use of the property, and is in the nature of a destruction of the use for which it was intended. The remedy, therefore, is well sought, if the act of the defendant is not justified.

The next question is, whether the defendant can justify the act complained of, by his ownership of the land on the Gilford side of the river, opposite the mill and land in which the plaintiff claims an interest, and by the erection of a mill there in 1803, or 1804, and the extension of the dam across the river, in the manner mentioned in the case.

The title of the defendant, on that side of the river, derived from Skinner and others, bounds him on the river, and of course extends to the thread of it.    But this would not authorize him, or any one under whom he claims, to extend a dam across the river, and appropriate the whole water to his own use, as first occupant ; nor to flow the land on the Meredith side, by means of a dam erected below.    5 *N. H. R.* 231, *Gilman* vs. *Tilton ;* 4 *Mason's R.* 400, *Tyler* vs. *Wilkinson ;* 13 *Johns.* 212.

Nor can the defendant justify flowing the plaintiff's mill and land, by reason of the erection of the mill and dam on the southerly, or Gilford side of the river, more than thirty years since.    If that mill and dam had continued for a period of twenty years, the continuance of the dam, and the uninterrupted use of the water, for that period, would have furnished conclusive evidence of a right to maintain the dam, and to use the water, to the extent of the use for that period. Whether such circumstances would have furnished evidence of a general grant to use the water of the river at the mill on the southerly side, or whether the owner of the land at the northerly end of the dam might have erected a mill there, and have used the dam, such as it was—or have made additions to it, for his own benefit, and have used the residue of the water, or any part of it—we have not found it necessary to enquire.    It appears from the case, that a portion of the dam was carried away soon after it was built.    A log was generally put across, afterwards, when the mill was used ; but the mill itself was not used after 1819, and went to decay, for what reason does not appear.    The fact that a portion of the dam remained more than twenty years, and still

remains, furnishes no evidence of a right to use all the water there. That constitutes no appropriation of the mill privilege. 5 *N. H. R.* 231 ; 4 *Mason* 397. A man may build a dam as high as he pleases on his own land. So long as he does not obstruct others in the enjoyment of their property and rights, they have no occasion to complain, nor does his dam, in such case, furnish any evidence of a grant to him. It is the adverse use of the stream which furnishes the evidence of the right to interfere with the property of others.

If the erection and continuance of a mill and dam might have furnished evidence of a right to flow the plaintiff's land, by means of that dam, it would not follow that the defendant could flow the plaintiff's land by means of a dam erected at another place below. There might be incidental advantages, to the owners on the northerly side, in having a dam at the place where the old mill stood, which would induce them to make a grant of the right to maintain such dam, and to flow the land by it, but which would not accrue from the dam erected at Batchelder's mills ; and if the right is maintained by the presumptive evidence arising from occupation for more than twenty years, it might perhaps be limited to the maintenance of a dam at the same place, or of one which should flow in the same manner ; but it is not necessary to pursue this enquiry.

It appears farther, that rafts of logs and of boards have, for thirty years or more, passed up and down the river ; and it is alleged that the river is a common public highway, and the plaintiff's dam an obstruction and nuisance. But this cannot justify the defendant in flowing the plaintiff's undivided half of the land, nor in covering with water the dam there erected.

In *Hart* vs. *The Mayor, &c. of Albany*, 9 *Wend.* 571, a query is made, whether an individual, without being specially aggrieved, has a right to abate or remove a nuisance in a public river. If the defendant had a right to interfere, on that ground, it was by abating the nuisance, (10 *Mass.* 70,

*Arundel* vs. *McCulloch* ; 2 *Mass.* 143, *Wales* vs. *Stetson*,)    The State
not by covering it up, and the plaintiff's land with it.    *vs.*
                 *Judgment for the plaintiff.*    Wallace.