Merrimack
No. 92-599

RIVERWOOD COMMERCIAL PROPERTIES, INC.

v.

FARNUM W. COLE & a.

March 22, 1994

*Castaldo, Hanna & Malmberg, P.C.*, of Concord (*Mark S. McCue* and *Steven L. Winer* on the brief, and *Mr. McCue* orally), for the plaintiff.

*Scotch and Zalinsky*, of Manchester (*Bertrand A. Zalinsky* on the brief and orally), for the defendants.

BROCK, C.J. The defendants appeal an order of the Superior Court (*Mohl*, J.) granting the plaintiff's petition to quiet title to a certain tract of land. The defendants argue that the trial court erred in ruling that any interest held by them in the land had passed to the plaintiff, Riverwood Commercial Properties, Inc. (Riverwood), by virtue of adverse possession. We reverse and remand.

This appeal arises out of the plaintiff's petition to quiet title to a sixty-acre parcel of land in Pembroke known as the First Marston Lot (Marston Lot). The defendants, Farnum W. Cole, Edward A. Cole, Caroline Phillips, and Richard P.I. Cole, claim a fractional co-tenancy interest in the land. The issues involving the plaintiff's adverse possession of the Marston Lot were submitted to the superior court through an agreed statement of facts, exhibits, and a stipulated chain of title. The Marston Lot was initially owned by Samuel Moore. In 1886, Moore conveyed the lot by deed to Frank S. Whitehouse and Charles B. Whittemore as tenants in common, each receiving an undivided half interest in the property. The Frank S. Whitehouse half

interest, which passed to Laurence F. Whittemore in 1943, is presently owned by the plaintiff and is not at issue in this case. The plaintiff's claim of adverse possession concerns the title to the Charles B. Whittemore half interest.

Charles B. Whittemore died intestate in 1928, and his half interest eventually passed to his wife Clara, daughter Edith and his son Charles F. Whittemore. Edith Whittemore died in 1957, and her will specifically devised her interest in the Marston Lot to Laurence F. Whittemore. The will described her interest as an undivided one-half interest in the Marston Lot, even though she actually possessed only a fraction of an undivided half interest. The interest held by Laurence F. Whittemore eventually passed to the plaintiff through a series of conveyances.

Charles F. Whittemore died intestate in 1931. His interest in the Marston Lot eventually passed by devise or descent to Frances Whittemore Cole. It is this interest that the plaintiff claims to have gained by adverse possession. During the course of this case, Mrs. Cole assigned her interest in the Marston Lot to her children, the named defendants.

The superior court ruled that the plaintiff and its predecessors in title claimed, possessed, and used the Marston Lot in a manner adverse to the interests of any cotenants for more than twenty years, and, therefore, the plaintiff received exclusive title to the land by adverse possession. The superior court found that the plaintiff and its predecessors in title used and possessed the Marston Lot under deeds purporting to convey the entire undivided half interest originally held by Charles B. Whittemore, and that this use and possession under color of title amounted to an ouster of any cotenants not in possession.

The doctrine of adverse possession derives from the twenty-year statute of limitations on a landowner's right to bring a cause of action for the recovery of real estate. *Hewes v. Bruno*, 121 N.H. 32, 33, 424 A.2d 1144, 1144–45 (1981); *see* RSA 508:2 (1983). After an adverse possessor possesses land for twenty years in a manner and under a claim adverse to that of the actual owner, the owner can no longer bring an action to recover the land, and title passes to the adverse possessor. *See Hewes*, 121 N.H. at 34–35, 424 A.2d at 1145. "Because an owner of land must bring an action within the statutory limitation period, the possession of the occupant must be of such a nature as to have given the owner a cause of action." *Id.* at 33, 424 A.2d at 1145. The possession of the land must be adverse, open, continuous, and exclusive, so as to give notice to the record owner of the

adverse claim being made to the land. *Page v. Downs*, 115 N.H. 373, 374, 341 A.2d 767, 768 (1975); *Little v. Downing*, 37 N.H. 355, 367 (1858).

The parties do not dispute that one cotenant can adversely possess against another. *See Emery v. Dana*, 76 N.H. 483, 489, 84 A. 976, 978 (1912). Because, however, the possession of one cotenant is considered the possession of all and each cotenant is equally entitled to the use, benefit, and possession of the common property, the acts of the cotenant in possession cannot be assumed from the fact of possession alone. *See Webster v. Calef*, 47 N.H. 289, 295 (1867); *Odiorne v. Lyford*, 9 N.H. 502, 510–11 (1838). At least constructive notice of the intent of the cotenant in possession to adversely possess against his or her cotenant is generally required. *See Forest v. Jackson*, 56 N.H. 357, 362 (1876).

A different rule applies, however, when the party in possession is the grantee of a cotenant taking under a conveyance purporting to convey full title. *See Thompson v. Gerrish*, 57 N.H. 85, 86 (1876). In such cases

> "a conveyance by one cotenant to a stranger to the title, by an instrument purporting to pass the entire title in severalty, and not merely such cotenant's individual interest, followed by an entry into actual, open, and exclusive possession by such stranger under claim of ownership in severalty, amounts to an ouster of the other cotenants, which, if continued with the necessary requisites for the statutory period, will ripen into good title by adverse possession."

3 AM. JUR. 2D *Adverse Possession* § 236 (1986). In this case, Laurence F. Whittemore conveyed in 1958 a "full fee interest" by deed to the plaintiff's predecessor in title, Merrimack Valley Realty Company, a stranger to the title. The issue, therefore, is whether the plaintiff used and possessed the property for the statutory period in a manner sufficient to establish adverse possession.

■ What constitutes possession may vary from case to case depending on the nature of the land at issue, *see Page*, 115 N.H. at 374, 341 A.2d at 769, but any claim of adverse possession must be grounded in some actual entry upon the land. *See Hale v. Glidden*, 10 N.H. 397, 401 (1839); 3 AM. JUR. 2D *Adverse Possession* § 17 (1986). The requirement that an adverse possessor make some entry upon the land applies even when the claim is made under color of title. *See, e.g., Aiken v. Ela*, 62 N.H. 400, 400–01 (1882); *Boynton v. Hodgdon*, 59 N.H. 247, 249 (1879); *Newmarket Manufacturing Co. v. Pen-*

*dergast*, 24 N.H. 54, 64 (1851); *Bailey v. Carleton*, 12 N.H. 9, 17–18 (1841).

█ As evidence of its claim of adverse possession, the plaintiff cites several examples of ownership including the payment of all annual real estate taxes since 1958, the granting of various easements, the preparation of surveys of the Marston Lot, the subdivision of part of the lot, the construction of a private roadway, and the conveyance of fee simple interests in parts of the lot. This evidence, however, is insufficient as a matter of law to support a claim of adverse possession because it fails to satisfy the basic requirement that the land actually be possessed adversely to the defendants' interest for the statutory period. *See Linen v. Maxwell*, 67 N.H. 370, 371, 40 A. 184, 184 (1892).

Edith Whittemore's specific devise in 1957 of half of the interest in the Marston Lot and the subsequent conveyances under color of title, by themselves, do not commence a period of adverse possession. Likewise, the payment of annual real estate taxes, because it involves no entry onto the land, could not have commenced the running of the statutory period. Such acts cannot be deemed to give notice to an owner that an adverse claim is being made upon the real property. Further, we fail to see the significance of the three utility easements granted in 1950 by Laurence F. Whittemore, who at that time was a cotenant with Edith Whittemore and the heirs of Charles F. Whittemore. The strongest elements of the plaintiff's adverse possession claim involve the improvements made to the lot, which include the surveys, subdivision, and roadway construction. All of these activities, however, were conducted after 1982. Regardless of whether these activities could have amounted to an adverse possession of the lot, they have not continued for twenty years and, therefore, do not meet the statutory time requirement.

The parties have asked this court to determine exactly what fractional interest in the Marston Lot is held by the defendants. To do so requires determining how Charles B. Whittemore's interest passed through intestacy in 1928. The plaintiff contends that the Whittemore undivided half interest passed in thirds to Charles B. Whittemore's wife and two children. The defendants maintain that the interest passed only to the two children because there is no record of Charles B. Whittemore's wife, Clara, having waived her dower and homestead rights as required under the applicable statutory law.

This question was not addressed by the superior court, and we decline to answer it based on the record before us. We remand for further proceedings on the issue of what fractional interest in the

Marston Lot is held by the defendants. In the interest of judicial economy, we are able to clarify two issues of law that potentially may arise on remand. First, if the nature of the real property was such that Clara Whittemore had no dower or homestead right in any land owned by Charles B. Whittemore at his death, then she would not have been required to make an official release of these non-existent rights to be entitled to a statutory share under PL 306:11 (1926). *See McDonough v. Haskell*, 84 N.H. 229, 230, 149 A. 72, 72 (1930). Second, if Clara Whittemore had a dower or homestead right in any property owned by her husband on his death, she would have had to release that right in order to have received the one-third elective share provided for in PL 306:11. A widow's right to receive a statutory elective share in lieu of her dower and homestead rights was not exercisable against the individual pieces of property owned by her husband, but rather required a release of rights in all such property so that she could receive a one-third "portion of all the real estate" belonging to her husband. *See* PL 306:11 (1926); *see also, e.g., McDonough*, 84 N.H. at 229, 149 A. at 72; *Hall v. Smith*, 59 N.H. 315, 315–16 (1879).

*Reversed and remanded.*

All concurred.