NOTICE: This opinion is subject to motions for rehearing under Rule 22 as well as formal revision before publication in the New Hampshire Reports. Readers are requested to notify the Reporter, Supreme Court of New Hampshire, One Charles Doe Drive, Concord, New Hampshire 03301, of any editorial errors in order that corrections may be made before the opinion goes to press. Errors may be reported by email at the following address: reporter@courts.state.nh.us. Opinions are available on the Internet by 9:00 a.m. on the morning of their release. The direct address of the court's home page is: https://www.courts.nh.gov/our-courts/supreme-court

THE SUPREME COURT OF NEW HAMPSHIRE

———————————————

Belknap
No. 2022-0234

TODD H. MADDOCK & a.

v.

MICHAEL J. HIGGINS

Argued: May 11, 2023
Opinion Issued: August 23, 2023

Steiner Law Offices, PLLC, of Concord (R. James Steiner on the brief and orally), and Law Offices of Stephan T. Nix, of Gilford (Stephan T. Nix on the brief), for the plaintiffs.

Normandin, Cheney & O'Neil, PLLC, of Laconia (William D. Woodbury on the brief and orally), for the defendant.

DONOVAN, J. The plaintiffs, Todd and Margaret Maddock, appeal an order of the Superior Court (O'Neill, J.) ruling in favor of the defendant, Michael Higgins, on the plaintiffs' petition to quiet title and their request for declaratory judgment, equitable relief, and a temporary injunction. The plaintiffs argue that the court erred by: (1) failing to find that monuments in the field control over bearings or distances in a deed or plan; (2) finding that the plaintiffs did not establish title by adverse possession; (3) finding that the plaintiffs did not meet their burden to establish a boundary by acquiescence; (4) dismissing the

plaintiffs' trespass claim; and (5) finding that the testimony of one of the defendant's witnesses was credible.

We conclude that, based upon the record in this case, the trial court properly found that the field monuments do not control the boundaries established by the parties' deeds, properly found that the plaintiffs did not establish a boundary by acquiescence, properly granted the plaintiffs a prescriptive easement over the limited adjacent area for the purposes of snow removal, and properly assessed the credibility of the witnesses. We further conclude that the trial court committed no error by dismissing the plaintiffs' trespass claim but reverse, in part, the trial court's adverse possession decision as it pertains to the plaintiffs' claims concerning their driveway and parking area. Accordingly, we affirm in part, reverse in part, and remand for further proceedings consistent with this opinion.

## I. Facts

The plaintiffs own real property at 39 Barefoot Place (Maddock Property) in Gilford. The defendant owns abutting real property at 33 Barefoot Place (Higgins Property). The two properties are part of the Gunstock Acres development. The Guyers owned the Maddock Property for nearly twenty years prior to the plaintiffs' purchase. Prior to the Guyers, the Halls owned the Maddock Property for sixteen years. Prior to the defendant, U.S. Bank Trust (Bank) owned the Higgins Property for approximately ten months, and prior to the Bank, the Ramsdells owned the Higgins Property for twenty-seven years.

The deed to the Maddock Property describes it as a five-sided property along Barefoot Place that abuts the Higgins Property. A surveyor in 2019 plotted the plaintiffs' property boundary lines, and the results of the survey were similar to the deeded description. The surveyor produced a plan that depicts a mathematically reconstructed boundary (the Mathematical Line) of the plaintiffs' property which cuts through portions of the plaintiffs' driveway and parking area and extends to the back of the property, placing portions of the driveway and parking area, as well as a shed built by the Guyers, south of the Mathematical Line, and, thus, as part of the Higgins Property. The 2019 survey did not locate any monuments at the north or south end of the Mathematical Line.

Nevertheless, the 2019 survey found two monuments in the vicinity of the properties' boundaries. Both parties were generally aware that there were monuments on the properties. Monument A is an iron rod next to a stump located near Barefoot Place road, and Monument B is an iron pipe surrounded by rocks that sits in the steep, wooded section of the properties. The plaintiffs concede that the origin of Monument A is unknown. The surveyor believed that Gunstock Acres set Monument B in the 1970s. Neither the map depicting Gunstock Acres nor the property deeds mention, or depict, any monuments.

2

The parties disagree on the location of the boundary between the two properties. The plaintiffs assert that their property extends to a line between monuments A and B (the A-B Line), and the defendant claims that his property extends to the Mathematical Line. The disputed property sits in the area between the A-B Line and the Mathematical Line (the Disputed Area). Parts of the plaintiffs' driveway, parking area, and the shed built by the Guyers are located within the Disputed Area.

The driveway and parking area were constructed in 1978 and have remained in the same location since their construction. The driveway was paved with asphalt after the plaintiffs purchased the property. When the Ramsdells purchased the Higgins Property, Dr. Hall informed Ms. Ramsdell that the Halls' driveway encroached onto the Higgins Property. The Ramsdells allowed the Halls to continue their use of the driveway and parking area as part of a "gentlemen's agreement" between the neighbors. The Ramsdells never revoked that permission while the Halls lived there.

When the Halls owned the Maddock Property, they filed multiple site plans with the Town of Gilford to improve the property, amend the use of the property, and appeal a prior zoning board decision. Some of the site plans had accompanying measurements while others did not. Every site plan consisted of a hand-drawn, four-sided sketch that depicted the house, driveway, and parking area within the boundaries of the plaintiffs' property. The Ramsdells, when present for public meetings regarding those site plans, never objected to the depicted boundaries.

Ms. Ramsdell never witnessed the Halls perform any actions in the Disputed Area aside from their use of the driveway and parking area. After the Guyers obtained title to the Maddock Property, they occasionally cleared brush, raked leaves, and felled small trees within the Disputed Area. Mr. Guyer installed the shed in 2010. Additionally, Mr. Guyer occasionally walked a game trail in the Disputed Area. During trial, the Guyers mentioned a fire pit within the Disputed Area, but the approximate location given for the fire pit included land outside of the Disputed Area. At no point did the Guyers post signage or mark trees in the Disputed Area, nor did they conduct significant tree cutting in that area.

When the Ramsdells cut down trees on their property (which was subsequently acquired by Higgins), they refrained from cutting down any trees within the Disputed Area at the Guyers' request. Ms. Ramsdell testified that she and her husband refrained from further cutting in an effort to be good neighbors and not because of a belief or recognition that the Guyers owned or controlled the Disputed Area. The Ramsdells occasionally entered the driveway to retrieve their dogs or talk to the Guyers. After acquiring ownership of the Maddock Property from the Guyers, plaintiff Todd Maddock cleared brush and

3

occasionally walked in the Disputed Area with his dog. The plaintiffs did not post signage in the Disputed Area.

In 2019, after the survey, the defendant cut down several trees in the Disputed Area. Shortly thereafter, the plaintiffs filed a petition to Quiet Title of the Disputed Area and later requested Declaratory Judgment, Equitable Relief, and a Temporary Injunction. The plaintiffs asserted causes of action for adverse possession, boundary by acquiescence, and timber trespass against the defendant. The superior court held a seven-day bench trial. The court ruled in favor of the defendant, finding there was no adverse possession or boundary by acquiescence, and, as a result, no timber trespass. The court also granted the plaintiffs a prescriptive easement covering the driveway and parking area, along with a limited adjacent area for the purpose of clearing snow. The court denied the plaintiffs' motion to reconsider, and this appeal followed.

## II. Analysis

When reviewing a trial court's decision rendered after a trial on the merits, we will uphold the trial court's factual findings and rulings unless they lack evidentiary support or are legally erroneous. Loon Valley Homeowner's Ass'n v. Pollock, 171 N.H. 75, 78 (2018). We do not decide whether we would have ruled differently than the trial court, but, rather, whether a reasonable person could have reached the same decision based upon the same evidence. Id. We defer to the trial court's judgment on such issues as measuring the credibility of witnesses and determining the weight to be given the evidence. Id. It is within the province of the trial court to accept or reject, in whole or in part, whatever evidence was presented. Id. We review the trial court's application of the law to the facts de novo. Id.

### A. Control of Monuments Generally

The plaintiffs maintain that the trial court erred by failing to conclude that monuments A and B established the boundary between the two properties. They rely upon case law from the nineteenth century that states "monuments control the language of a description, if named in the deed, and then existing on the ground; if named in the deed, and afterward erected on the ground; and, though not named in the deed, yet if subsequently erected by the parties on the ground." Colby v. Collins, 41 N.H. 301, 304 (1860) (citations omitted and emphasis added). The plaintiffs assert that Colby, and its progeny, establish that monuments on the ground control the boundary between two properties as a matter of law, regardless of what may be written in a deed. In other words, they argue that simply because monuments exist, they control. We disagree.

4

In Colby, we explained that monuments not described in a deed would control when, after a deed had been written, the adjoining landowners agreed to erect monuments to settle the property line between them and, in effect, change the description in the deed. Id. at 303-04 (holding that monuments can alter the property line in a deed "where a party has himself a title to land having a certain description, and he afterward, by agreement with an adjoining owner, settles the line between them so as to change that description"). In other cases in which we have held that monuments controlled, either the deeds mentioned the monuments or the parties agreed to the existence of the monuments upon the conveyance of the property. See Seely v. Hand, 119 N.H. 303, 305 (1979) (where the deed specifically described stone posts delineating corners of the property but the posts were gone, their locations could still be determined from external evidence); Fagan v. Grady, 101 N.H. 18, 19-20 (1957) (determining the deed addressed the controlling monument, extrinsic evidence supported the existence of that monument, and a surveyor placed a new monument in the same location at a later date); Cunningham v. Curtis, 57 N.H. 157, 159 (1876) (concluding that a fence known to the parties at time of conveyance was deemed a monument).

Here, neither the deeds nor the plans by the original developer mention any monuments when describing the properties. Although the record is unclear about who placed the monuments, the evidence submitted at trial established that neither the parties nor their predecessors in title did so. Further, the plaintiffs concede that the origin of Monument A is unknown. Therefore, in contrast to prior cases where we have recognized that monuments controlled over a deed or other property description, the facts here do not demonstrate that the parties understood the monuments to constitute or mark a boundary. See Fagan, 101 N.H. at 19-20 (controlling monuments were mentioned in the deed and supported by extrinsic evidence); see also Colby, 41 N.H. at 304 (reasoning that if the parties had set monuments upon a line that they made and upon which they agreed, then the land within that established boundary would be conveyed regardless of the description in the deed); Clough v. Bowman, 15 N.H. 504, 511 (1844) (espousing that parties can bind themselves by agreeing "upon a dividing line between them by parol and establish[ing] monuments"). Accordingly, we conclude that the trial court did not err in determining that the monuments in this case do not, in and of themselves, establish boundary lines as a matter of law.

B. Adverse Possession

In the alternative, the plaintiffs argue that they have title to the entirety of the Disputed Area through adverse possession. The plaintiffs argue that the trial court erred by: (1) failing to find that the documents that the plaintiffs submitted, including the filings with the town offices and the hand-drawn site plans, were sufficiently reliable to establish that the plaintiffs adversely

possessed the Disputed Area under color of title; and (2) finding that the character of use of the Disputed Area did not demonstrate adverse possession.

We first address the plaintiffs' argument that they adversely possessed the Disputed Area under color of title. The doctrine of color of title is based upon the concept that possession of an instrument showing title presumptively amounts to notice to the true owner of the extent of the adverse possessor's claim. Dame v. Fernald, 86 N.H. 468, 470-71 (1934). When a party enters property under color of title, the party is presumed to enter according to title, thereby gaining constructive possession of the whole of the land, or the part that is improved. Bailey v. Carleton, 12 N.H. 9, 15 (1841). By nature, "color of title may both show the extent and the character of the possession under it." Dame, 86 N.H. at 471. For an instrument to provide color of title, it must define the bounds of the disputed tract. Id. at 470. If no bounds are described, "there can be no notice of the extent of the claim, and an instrument defective in that particular cannot give color of title." Id. at 471.

The plaintiffs argue that the trial court erred in finding that the 1978, 1983, and 1992 site plans — hand-drawn sketches created by their predecessors in title — "did not provide color of title." Specifically, they assert that the trial court erred in concluding that the site plans were not reliable and did not accurately portray the Maddock Property. We construe the plaintiffs' argument as challenging the weight the trial court accorded the site plans in resolving the plaintiffs' color of title claim. However, trial courts are free to determine the appropriate weight to be given site plans. See Perry v. Parker, 101 N.H. 295, 297 (1958) (stating that the trial court could find the plan "reliable and helpful in deciding the boundary dispute" based upon "its age, appearance and custody" (emphasis added)); see also DiMinico v. Centennial Estates Coop., 173 N.H. 150, 156 (2020); Dame, 86 N.H. at 470-71. "We defer to the trial court's determination regarding the weight to be given evidence unless that determination is unsupported by the evidence or is erroneous as a matter of law." DiMinico, 173 N.H. at 156.

Here, although all of the site plans and public documents upon which the plaintiffs rely depict the Maddock Property as a four-sided lot, the deed to the Maddock Property lays out dimensions for a five-sided lot. Further, the site plans are hand-drawn sketches, never identify the A-B monuments, and include dimensions that are not consistent with any of the plans or the deed. The surveyor, who was an expert witness for the plaintiffs, testified to the general inaccuracy of the site plans and stated that they were not designed to specifically determine the boundary of the Maddock Property. Accordingly, we conclude that the evidence in the record supports the trial court's determination that the site plans were unreliable and failed to accurately depict the bounds of the Maddock Property, and, therefore, did not prove the plaintiffs' color of title claim. See DiMinico, 173 N.H. at 156; see also Dame, 86 N.H. at 471. We decline to address the plaintiffs' additional arguments

6

regarding notice or occupation under color of title because they rely on the premise that the site plans established color of title.

Next, we address the plaintiffs' argument that the character and history of the use and occupation of the Disputed Area was sufficiently notorious to provide notice to the title holders of the Higgins Property. "In order to obtain title by adverse possession, the adverse possessor must prove, by a balance of probabilities, twenty years of adverse, continuous, and uninterrupted use of the land claimed so as to give notice to the owner that an adverse claim is being made." Blagbrough Family Realty Trust v. A & T Forest Prods., 155 N.H. 29, 33 (2007). "In addition, adverse use is trespassory in nature, and the adverse possessor's use of the land must be exclusive." Id. "The success or failure of a party claiming adverse possession is not determined by the subjective intent or the motives of the adverse possessor." Id. "Rather the acts of the adverse possessor's entry onto and possession of the land should, regardless of the basis of the occupancy, alert the true owner of the cause of action." Id. "The law requires more than occasional, trespassory maintenance in order to perfect adverse title; the use must be sufficiently notorious to justify a presumption that the owner was notified of it." Id. at 34.

The nature of use of property can be inferred from its manner, character, and frequency, as well as the situation of the parties. O'Malley v. Little, 170 N.H. 272, 278 (2017). "Whether the use of property has been adverse or permissive is a matter of fact to be determined by the trial court." Id. Permissive use is not adverse. See id. When evaluating the merits of an adverse possession claim, courts must strictly construe the evidence of adverse possession of land. Blagbrough, 155 N.H. at 33.

Here, the Halls used the driveway under a "gentlemen's agreement" with the Ramsdells and were not seen otherwise using the Disputed Area. The Guyers occasionally cleared brush, raked leaves, felled small trees, and walked a game trail in the Disputed Area. Mr. Guyer installed a shed in the Disputed Area in 2010. The Guyers placed a fire pit in the general area, but the location was not made clear during trial and its use was only occasional. On this record, we conclude that the evidence supports the trial court's conclusion that the actions by the Guyers do not rise to a level of notoriety that would support adverse possession of the wild, undeveloped portion of the Disputed Area. See Cushing v. Miller, 62 N.H. 517, 525 (1883) (holding occasional removal of timber on a wild lot is not sufficiently adverse) overruled on other grounds by Dame, 86 N.H. at 471; Blagbrough, 155 N.H. at 33-34 (holding that a combination of: (1) routinely entering a parcel for walks and recreational activities; (2) allowing use of the parcel for children to play on; (3) collecting Christmas trees from the area; and (4) mowing grass, removing trees, and planting some flowers on the parcel did not support a claim for adverse possession). The only potential claim of notoriety upon which the plaintiffs can rely is the erection of the shed and its continued use, but the use of the shed

7

does not meet the twenty-year requirement to establish adverse possession. See Riverwood Commercial Prop's v. Cole, 138 N.H. 333, 336 (1994) (opining that improvements to the land were the strongest claims for adverse possession, but did not meet the twenty-year requirement).

The plaintiffs, however, claim that the wild nature of the Disputed Area limited its use, and, accordingly, their use of the Disputed Area, and that of their predecessors, was sufficiently notorious. We recognize that "[t]he kind and frequency of acts sufficient to support a finding of adverse possession depends somewhat on the condition of the property and the uses to which it is adapted in reference to the circumstances of the possessor." Page v. Downs, 115 N.H. 373, 374 (1975) (emphasis added). Nevertheless, even when a property is deemed wild, like portions of the Disputed Area in this case, the occasional clearing of trees from a wild area alone does not "constitute the visible, continuous, and exclusive occupation necessary to give title by possession." Cushing, 62 N.H. at 525. Here, the record supports the trial court's findings that the evidentiary history of the use of the wild portions of the Disputed Area "hardly rises above occasional maintenance of a forested area." Accordingly, similar to our holding in Cushing, even when considering the wild nature of the Disputed Area, we conclude that the trial court did not err in finding that the historical use of the wild portion of the Disputed Area was not sufficiently notorious to support a claim for adverse possession. See Blagbrough, 155 N.H. at 34.

To the extent that the plaintiffs argue that monuments A and B also gave notice to the owners of the Higgins Property, we have held that "it is the occupation itself that furnishes the notice." Minot v. Brooks, 16 N.H. 374, 378 (1844); see also Mastroianni v. Wercinski, 158 N.H. 380, 383 (2009) (notoriety rests on the public policy that owners need to be sufficiently put on guard to take preventative action before losing property rights). Accordingly, the monuments are not relevant to determining whether the use and occupation of the Disputed Area was sufficiently notorious to provide notice to the titleholders of the Higgins Property. Therefore, we conclude that the trial court did not err in failing to find that the presence of the monuments put the owners of the Higgins Property on notice.

In the alternative, the plaintiffs also argue that the trial court erred in finding that the plaintiffs did not establish adverse possession of the driveway, the parking area, and the adjacent area used for discarding snow that extends into the Disputed Area. In the plaintiffs' view, the court should have found adverse possession as to that portion of the Disputed Area because their use of the driveway and parking area, as well as their predecessors' use, was exclusive, and they were not ousted. On the other hand, the defendant argues that the trial court correctly granted only a prescriptive easement over the driveway, the parking area, and a limited adjacent area because the plaintiffs, and their predecessors in title, did not engage in exclusionary activity.

8

Here, the trial court found, and the defendant does not dispute, that the evidence presented at trial supported a finding that the plaintiffs maintained a prescriptive easement over the driveway and the parking area, as well as a limited adjacent area. Specifically, the trial court found that "the evidence presented at trial was insufficient to establish the plaintiff's exclusive use within the prescriptive easement area." A claim of adverse possession, as opposed to a claim of a prescriptive easement, requires proof that the possessor's use was exclusive. Compare O'Malley, 170 N.H. at 276 ("To acquire title to real property by adverse possession, the possessor must show twenty years of adverse, continuous, exclusive and uninterrupted use of the land claimed so as to give notice to the owner that an adverse claim is being made." (quotation omitted)), with Stowell v. Andrews, 171 N.H. 289, 297 (2018) ("A party claiming to have a prescriptive easement must prove by a balance of probabilities twenty years' adverse, continuous, uninterrupted use of the land claimed in such a manner as to give notice to the record owner that an adverse claim was being made to it."). Accordingly, in order to resolve the plaintiffs' adverse possession claim with respect to the driveway and parking area, we must determine whether the record supports the trial court's conclusion that the plaintiffs failed to satisfy their burden of proving that their use of those portions of the Disputed Area was exclusive. See O'Malley, 170 N.H. at 276 ("The adverse possessor must prove these elements by a balance of probabilities."). On the record before us, we conclude that the trial court's exclusivity finding with respect to the driveway and parking area lacks evidentiary support. See Pollock, 171 N.H. at 78.

Based upon their conversation with the Halls, the Ramsdells knew that the driveway and parking area extended onto the Higgins Property. The subsequent "gentlemen's agreement" between the Ramsdells and the Halls terminated in 1994 when the Guyers purchased the Maddock Property. See Blaisdell v. Portsmouth, 51 N.H. 483, 485 (1871) (noting that a parol license terminates when property is conveyed). The Ramsdells never extended a new agreement to the Guyers, nor did they confront the Guyers despite having notice of the continued adverse use of the driveway.

Moreover, a review of the record fails to show that anyone other than the owners of the Maddock Property used the driveway or the parking area. The Ramsdells only entered the driveway to retrieve their dogs or to occasionally talk with the Guyers. There is no evidence as to whether the Bank took any action regarding the driveway or the parking area when it possessed the Higgins Property. During their possession, the plaintiffs made improvements to the driveway and parking area without objection or interference by the defendant. Although the trial court appears to have relied upon the fact that the plaintiffs and Guyers did not post signage on the driveway, the court did not cite any authority, nor are we aware of any, that requires signage in order for a use to be exclusive. Accordingly, we conclude that the use of the driveway

9

and parking area, by the plaintiffs and the Guyers, was exclusive in nature and lasted more than twenty years.

Because we have determined that the use of the driveway and parking area was exclusive, we must also address the defendant's argument that the entry by the Ramsdells amounted to an ouster. Mere entry by the owner is not enough to destroy a claim of adverse possession. See O'Malley, 170 N.H. at 276. Instead, "[o]uster of an adverse possessor requires conduct that puts a reasonably prudent person on notice that he or she actually has been ousted." Id. In O'Malley, we concluded that an individual needed to do more than visit the disputed area and make occasional claims, through telephone or email, that the abutting property owners' improvement encroached on their property to show ouster. Id. at 277. Here, the Ramsdells never raised any objections to the Guyers, verbal or otherwise, about the driveway and they only occasionally visited the portion of the Disputed Area containing the driveway to talk with the Guyers or retrieve their dogs. Thus, we conclude that their actions were not sufficient to show ouster. See id. For the foregoing reasons, we reverse the trial court on this limited basis and conclude that the plaintiffs adversely possessed the portions of the driveway and parking area that extended into the Higgins Property.

As to the adjacent area used for snow removal, the trial court found, and the defendant does not challenge, a prescriptive easement for a "limited adjacent area required for the purpose of clearing snow." The trial court granted a prescriptive easement, as opposed to a finding of adverse possession, based upon its finding that the plaintiffs failed to present sufficient evidence that the use of the adjacent area was exclusive. On appeal, although the plaintiffs claim adverse possession of the limited adjacent area, they provide no argument, nor point to any evidence in the record, to support their exclusive use of this area. Upon reviewing the record, we agree with the trial court that there is insufficient evidence to support a finding that the plaintiffs' use of the adjacent area was exclusive, given that the record suggests the adjacent area was only used for depositing snow during the winter months. See Blagbrough, 155 N.H. at 33 (stating that the party seeking to obtain title by adverse possession must prove the elements of the claim by a balance of probabilities). Accordingly, we affirm the prescriptive easement over the limited adjacent area for the purposes of snow removal.

C. Boundary by Acquiescence

The plaintiffs argue that, even if adverse possession is not found, the trial court erred in concluding that the plaintiffs failed to establish a boundary by acquiescence. Boundary by acquiescence is established when a party proves that: (1) parties are adjoining landowners; (2) who have occupied their respective lots up to a certain boundary; (3) which they have recognized as the true boundary separating the lots; and (4) have done so for at least twenty

years.  O'Hearne v. McClammer, 163 N.H. 430, 435 (2012).  A boundary by acquiescence will prevail over the description of deeds and is conclusive upon successors in title.  Id.

The trial court found that the plaintiffs failed to meet the second and third elements.  Specifically, the court found that the owners in title of the Maddock Property did not occupy up to the A-B Line because their use of the Disputed Area was not sufficient to grant boundary by acquiescence, the site plans were not sufficiently accurate to demonstrate boundary lines, and there was insufficient evidence to show that all parties recognized the A-B Line as the true boundary.  On appeal the plaintiffs argue that the trial court erred because: (1) the site plans showed the Maddock Property extending to the A-B Line, which served as notice of a claim to the Disputed Area; and (2) the owners of the Higgins Property did not object to the depicted boundaries or the subsequent use of the Disputed Area, and they, therefore, acquiesced to the Maddock Property extending to the A-B Line.  We are unpersuaded.

As discussed earlier, the site plans did not establish color of title over the Disputed Area, and the use of the Disputed Area was not sufficiently notorious to establish adverse possession.  Thus, the plaintiffs fail to show that they, or their predecessors in title, occupied the Disputed Area up to the A-B Line.  Because they fail to meet the second element, we conclude that the plaintiffs failed to establish a boundary by acquiescence.[1]

D. Credibility of Witness Testimony

Finally, the plaintiffs argue that the court erred in finding Ms. Ramsdell's testimony to be credible because she was "coached" by the defendant.  Credibility is a determination for the trial court and we defer to its judgment.  Loon Valley, 171 N.H. at 78.  Here, our review of the record does not support the plaintiffs' claim that the witness was "coached," and because "the trial court had the advantage of seeing and hearing the [witness] on the stand, we will not substitute our judgment for that of the trial court."  Id. at 81 (quotation omitted).

III. Conclusion

For the foregoing reasons, we conclude that the trial court did not err in determining that the plaintiffs did not establish ownership over the entirety of the Disputed Area, either by monuments controlling as a matter of law, adverse possession, or boundary by acquiescence.  We also affirm the prescriptive easement over the limited area adjacent to the driveway and parking area for the purpose of clearing snow.  However, the record before us demonstrates that

---

[1] Because we agree with the trial court that the plaintiffs do not hold title to the wild portion of the Disputed Area, there is no need to address the timber trespass claim.

the plaintiffs adversely possessed the portions of the driveway and parking area that extend into the Higgins Property. Accordingly, we reverse that portion of the trial court's decision and remand for further proceedings consistent with this opinion.

Affirmed in part; reversed in part; and remanded.

MACDONALD, C.J., and HICKS, BASSETT, and HANTZ MARCONI, JJ., concurred.